**In the Matter of Norman COHEN, Trustee, Trust No. 71–LT–100, Debtor.**

**Bankruptcy No. 80–00282–BKC–SMW.**

United States Bankruptcy Court, S. D. Florida.

May 6, 1980.

Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, Fla., for AmeriFirst Federal.

James Edwards Yacos, Miami, Fla., for Debtor.

## MEMORANDUM OPINION ACCOMPANYING ORDER DISMISSING BANKRUPTCY PROCEEDING

SIDNEY M. WEAVER, Bankruptcy Judge.

This cause came on to be heard upon a Motion to Dismiss filed by AmeriFirst Federal Savings and Loan Association, a United States corporation, ("AmeriFirst"). The Court has entered an Order dismissing the debtor's petition in bankruptcy which accompanies this memorandum and is based upon the authorities and facts cited herein.

### I.

### BACKGROUND

This proceeding commenced with a voluntary petition by the debtor for relief under Chapter 11 of the new Bankruptcy Code. AmeriFirst, a secured creditor, filed a Motion to Dismiss the petition pursuant to Section 1112(b) of the Bankruptcy Code and alleged that the debtor was not an entity entitled to relief under the Bankruptcy Code and that consequently the petition should be dismissed for lack of jurisdiction.

### II.

### THE ISSUE

The issue here is whether or not the debtor ("Norman Cohen, Trustee, Trust No. 71–LT–100") is to be included within the definition of "Corporation" as contained in Section 101(8) of the Bankruptcy Code:

Bankruptcy Code § 101(8) "Corporation"
—(A) includes—

(i) association having a power or privilege that a private corporation, but not an individual or a partnership, possess;

(ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;

(iii) joint-stock company;

(iv) unincorporated company or association; or

(v) *business trust*; but

(B) does not include limited partnership. (Emphasis added).

Section 101(8) of the Bankruptcy Code is applicable by virtue of Section 109(d) of the Bankruptcy Code which states that:

Only a person that may be a debtor under chapter 7 . . . may [also] be a debtor under chapter 11.

The definition of "person" in Section 101(30) of the Bankruptcy Code states that "person" includes individuals, partnerships and corporations, but does not include governmental units.

Inasmuch as the debtor here operates pursuant to a trust agreement, the debtor is clearly neither an individual or a partnership. The issue, then, is whether the debtor may obtain jurisdiction pursuant to the Code pursuant to the applicability of the definition of "Corporation" in Section 101(8) as aforementioned.

### III.

### THE FACTS

Trust No. 71–LT–100 is a land trust organized pursuant to Florida Statute 689.07. The trust agreement was executed in 1974 and was by its terms retroactive to 1971. The trust *res* consisted of a single vacant and undeveloped parcel of real property. The beneficiaries of the trust and their interests were as follows:

| | | | |
|---|---|---|---|
| Norman Cohen | 53⅓% | Murray Blattman | 10% |
| Irwin Cohen | 13⅓% | Jerome H. Tick | 10% |
| Sanford Cohen | 13⅓% | | |

The Cohens are brothers. Norman Cohen was also trustee. Murray Blattman was the accountant for the trust and Jerome H. Tick had represented the Cohen brothers as an attorney.

The activities in connection with the property, which included zoning efforts, filling, and bulkheading were in large degree performed before the trust was legally created in the summer of 1974, were in many instances performed by entities other than the trust itself, and were activities consistent with the duties and responsibilities of a

trustee of a land trust, and in particular the duties and responsibilities outlined in the trust agreement for Trust No. 71–LT–100.

The following facts do not support the transformation of this land trust as urged by debtor into a "business trust" as contemplated by 101(8) of the Code:

1. The trust did not file for a 1979–1980 Dade County occupational license for a "business" as required by Article IX of the Metropolitan Dade County Code.

2. "Norman Cohen as Trustee" did not register as a fictitious name with the Clerk of the Circuit Court pursuant to the laws of the State of Florida which require persons operating a business under a fictitious name to so register.

3. The trust filed no separate tax returns as an entity and paid no corporate income taxes but instead permitted the beneficiaries to file "partnership tax returns" permitting all income and expenses of the entity to be the income and expense of the individuals.

4. Since its inception in 1971 the trust had no income from operations other than the October 1979 sale of two parcels of property released from the AmeriFirst mortgage.

5. Since 1971 the business activities of the trust consisted of filling and bulkheading the instant property and attempting zoning changes. According to the testimony of Norman Cohen and Jerome Tick a primary activity of the trust since its inception in 1971 has been to sell the property. By the terms of the Trust Agreement a sale of the instant property terminates the trust. This conduct is thus inconsistent with the operation of an ongoing business.

6. The Trust Agreement itself was not executed until 1974. Though the trust commenced "operations" in 1971 it did so without any written document evidencing its existence. Such conduct is also inconsistent with the position that the trust has an existence as an independent business entity. In fact such conduct is inconsistent with the existence of the trust as a separate entity at all.

7. Unlike a "corporation" or "business trust," the trustee in the instant agreement has no management control absent a 63% vote of the beneficiaries and must in fact disburse to the beneficiaries "all of the earnings, avails and proceeds of the trust property." This is not consistent with the notion that the trust is a commercial, business entity. A business entity does not typically disburse all proceeds and all income to the beneficiaries.

8. Since 1971 until the sale of a portion of the property in 1979 there was no disbursement of income to any beneficiary inasmuch as there was no income to disburse. This too is inconsistent with the position that the trust is a "business."

9. The trust gave as its "office address" a trailer which had no sign identifying the entity and according to Mr. Cohen the office was wherever he hung his hat.

10. The trust had no separate stationery, no property of any sort other than the real property, no letterhead, no automobiles, paid no salaries, had no employees, and had no license to do business.

11. The trust issued no financial statements to beneficiaries, issued no operating statements to beneficiaries, had no employee withholding taxes (since it had no employees) and did no advertising.

12. The trust had no loans or extensions of credit other than a mortgage loan on the instant real property.

13. The trust never developed the instant property from 1971 to 1979 other than filling and bulkheading and never constructed a single structure of any kind upon the subject property.

14. The trust never had an independent bank account.

15. The trust never had any formal meetings of beneficiaries, has no record of what any beneficiary actually contributed for the separate beneficial interests, and has beneficiaries who cannot state what they paid for their interest (See depos Tick, Blattman, I. Cohen and N. Cohen).

16. The trust was admittedly a close family enterprise with beneficiaries who except for the accountant and the attorney are three brothers (Norman Cohen, Irwin Cohen and Sanford Cohen).

17. The trust had a business structure whereby the shares of the beneficiaries are not freely transferable, had no written participation certificates issued, never had any public sale of beneficial interests, and never had any transfer of any beneficial interest.

18. The trust never collected any rent from the subject property, and no issue or profit from the subject property was collected until October, 1979, at which time $3,000,000.00 from the sale of a portion of the subject property was distributed not to the Trust No. 71–LT–100 but instead directly to the beneficiaries.

19. The trust borrowed substantial sums of money from Chase Manhattan Bank and later from AmeriFirst Federal, but never had any money from operations to finance interest charges in connection with said loans.

20. The trust never wrote a check.

21. The trust never had a budget.

22. The trust apparently has no independent accounting records. (Its books, records and cash disbursement journal are kept "together" with the books and records of other trusts).

23. There is uncertainty even as to the name of the trust for operating purposes: The Trust Agreement specifically refers to Trust No. 71–LT–100 as does the Petition for Bankruptcy. The Statement of Affairs submitted to support the petition refers however to "Trust No. 71–LT–100 a/k/a NORMAN COHEN, Trustee, Trust No. 6 d/b/a Williams." The accounting records referred to by Mr. Blattman refer to "Trust No. 6." This confusion further substantiates the proposition that there is here no valid business entity operating as such.

In addition the Trust Agreement indicates clearly that the Trustee holds the trust property "in trust . . . for the benefit of all present and future beneficiaries of this trust." Thus the Trust Agree-

ment itself does not support the proposition that the debtor is a corporation, unincorporated association, or business trust. By its terms the trust terminates when the real property owned by the trust is sold. It appears therefore that there is not an ongoing business separate and apart from the "protection and conservation" of the trust property as required by the terms of the Trust Agreement.

Inasmuch as the trust terminates with the sale of the subject property and the trustee has indicated that sale of same is their main object there would appear to be no ongoing "business" to reorganize pursuant to the purposes of Chapter 11.

## IV.

### THE LEGISLATIVE HISTORY

Debtor urges that the new Code has expanded the definition of "corporation" in a manner sufficient to include this particular land trust.

■ The legislative history of the new Code indicates that it was not intended to apply to an estate or trust and was not intended to expand the definition of "corporation" to include a land trust. Both the Senate and House Reports state that the definition of a "person" over whom the Bankruptcy Court may obtain jurisdiction "does not include an estate or a trust". 1978 U.S.Code Congressional and Administrative News, 5811, 6270. Similarly, the Report of the Committee of the Judiciary, United States Senate, to accompany S.2266, S.Rep.No.95–989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, p. 5811 states:

"Person" is defined in paragraph (30). The definition is a change in wording, *but not in substance*, from the definition in section 1(23) of the Bankruptcy Act. The definition is also similar to the one contained in 1 U.S.C. sec. 1, but is repeated here for convenience and ease of reference. Person includes individual, partnership and corporation. . . . *The definition does not include an estate or a trust*, which are included only in the defi-

nition of "entity" in proposed 11 U.S.C. 101(14). (Emphasis added).

Similarly, the Report on the Committee on the Judiciary, House of Representatives, accompany H.R.8200, H.R.Rep.No.95–595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin.News 1978, p. 6270, states:

"Person" is defined in paragraph (29). The definition is a change in wording, *but not in substance*, from the definition in section 1(23) of the Bankruptcy Act. The definition is also similar to the one contained in 1 U.S.C. § 1, but is repeated here for convenience and ease of reference. Person includes individual, partnership and corporation. . . . *The definition does not include an estate or a trust*, which are included only in the definition of "entity" in proposed 11 U.S.C. 101(14). (Emphasis added).

Also, through Section 101(8) includes "business trust" within the definition of corporation and eliminates the language of Section 1(8) of the Bankruptcy Act which included within the definition of corporation "any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument," the Court is not persuaded that by this change Congress intended to expand the category of debtors eligible for relief to include land trusts such as the debtor. See *In Re Treasure Island Land Trust*, 2 B.R. 332, 336 (M.D.Fla., Orlando Division, 1980), and the comment by the court that "any trust, business or non-business, may be an entity under 11 U.S.C. sec. 101(14), but not every entity can be a debtor."

## V.

### THE ATTEMPT TO AMEND THE TRUST AGREEMENT.

From the inception of the trust in 1974 the Trust Agreement specified that the trust was not to be considered to be a "business trust" or "an association in the nature of a corporation:"

10. The Trustee shall not transact business of any kind with respect to trust property which is prohibited by Chapter 609 of the Florida Statutes, or any other law. This Trust Agreement shall not be deemed to be, or create, or evidence the existence of a corporation, de facto or de jure, or a Massachusetts, or any other type of business trust, or an association in the name of a corporation.

On the debtor's representation that this paragraph of Trust No. 71–LT–100 was "surplus to the other more specific provisions of the trust as to the actual conduct of business activities as therein authorized," this language was deleted by an amendment to the trust two days before the filing of the bankruptcy petition. As pointed out at trial, however, if the paragraph was indeed "surplus" then the Trust Agreement is as effective without it to accomplish those same purposes. If the language amended was mere "surplusage," then the amendment itself is thus of no particular substantive force or effect in modifying the Trust Agreement.

Indeed, Debtor operated from April 30, 1971, to March 12, 1980, with this provision in the trust instrument. This language was in the instrument during all of the trust activities including the contractual borrowing of funds from AmeriFirst. It seems late now for the trust to change its character.

## VI.

### CASE LAW ON POINT ESTABLISHES THAT THIS LAND TRUST IS NOT ENTITLED TO THE PROTECTION OF A BANKRUPTCY COURT.

■ Cases decided under the old Bankruptcy Act are applicable to the new code and are cited *infra*. ("The definition is a change in wording, but not in substance . . . ." Legislative History of new code quoted *supra*.). Under the new Code the case of *In Re Treasure Island Land Trust, Debtor, supra*, is on point. There the court entered an order granting a Motion to Dismiss based upon the fact that the debtor was a land trust and not a business trust so as to be included in the definition of corporation under Section 101(8)(A) of the Code.

As here, the debtors in *Treasure Island* urged the Court to look to the "true nature" of the trust and exhorted the maxim of "substance over the form."

Debtor here urges that the *Treasure Island* trust is distinguishable from Trust No. 71–LT–100 in that the *Treasure Island* trust has a provision stating that the interests of the beneficiaries are "realty," whereas the instant trust has a statement to the effect that the interests of the beneficiaries are "personalty." This seems a distinction without a difference. The *Treasure Island* opinion does not indicate that this technical distinction (obviously made for purposes of securities law in the *Treasure Island* trust) had any bearing upon the ultimate conclusion that a land trust is not subject to the jurisdiction of the Bankruptcy Court.

The debtor also urges that the *Treasure Island* trust agreement "specifically denies any business activity to the trustee." This appears not to be the case. The provision of the trust agreement pointed to by Debtor states only that the trustee shall not "manage or operate the trust property nor undertake any other activity not strictly necessary to the attainment of the objects and purposes stated herein."

The *Treasure Island* instrument also goes on to state that the trustee shall not:

transact business of any kind with respect to the trust property within the meaning of Chapter 609 of the Florida Statutes, or any other law; nor shall this agreement be deemed to be, or create or

evidence the existence of a corporation, de facto or de jure, or a Massachusetts Trust, or any other type of business trust, or an association in the nature of a corporation, or a co-partnership or joint venture by or between the trustee and the beneficiaries, or by or between the beneficiaries. (Paragraph 5 of *Treasure Island* trust agreement).

The similarity between this language and that of paragraph 10 of Trust No. 71–LT–100 quoted earlier in this opinion is evident and provides no basis for distinguishing the trusts.

In *Treasure Island* the court was faced with the same argument urged here: since the trust was created to enable the participants to carry on a business and divide the gains, that the trust in fact operates as a business enterprise which must somehow qualify it to be a corporation. But the court in *Treasure Island* was unable to "close its eyes to the economic realities of the situation." *Id.* at 335. This Court faces a similar difficulty.

In denying bankruptcy relief the court in *Treasure Island* noted: "now that its form has proven inadequate for its intended purposes, the debtor seeks to abandon it and escape its consequences altogether." *Id.* The Court finds this remark applicable to the case at bar.

Indeed, the following observations made by the Court in *Treasure Island* as to the operations of the Treasure Island trust are presently manifest in Trust No. 71–LT–100:

| TREASURE ISLAND TRUST | TRUST NO. 71–LT–100 |
| --- | --- |
| 1. Registered and sold securities—(Court indicated that this was a factor which might make it *like* a business trust). | 1. Did not register or sell any securities to the public. |
| 2. Had no trade creditors. | 2. Has few trade creditors. |
| 3. Had specific language indicating it was not to be considered a business trust or corporation. | 3. Had specific language indicating it was not to be considered a business trust or corporation (but deleted same two days before filing bankruptcy). |
| 4. Failed to register as a business trust under Chapter 609 Florida Statutes. | 4. Failed to register as a business trust under Chapter 609 Florida Statutes. |

| TREASURE ISLAND TRUST | TRUST NO. 71–LT–100 |
|---|---|
| 5. Was organized as a land trust. | 5. Was organized as a land trust. |
| 6. Agreement interpreted according to Florida law. | 6. Agreement interpreted according to Florida law. |
| 7. Trust formed to purchase land and resell at a profit. | 7. Trust formed to purchase land and resell at a profit. |

The Debtor urges *In Re Associated Trust*, 222 F. 1012 (Mass.1914), in support of the proposition that prior to the 1926 amendment of the Bankruptcy Act the "unincorporated company" language in section 4(b) of the 1898 Act had been read to include a "real estate trust." However, "The Associated Trust" was a validly formed Massachusetts Business Trust formed pursuant to Massachusetts law. "Business trusts" are clearly within the ambit of the Bankruptcy Act and the new Code. The distinctions between "The Associated Trust" and Trust No. 71–LT–100 are evident:

| "The Associated Trust" | Trust No. 71–LT–100 |
|---|---|
| 1. Carried on business under a distinct name. | 1. Did not carry on business under a distinct name. |
| 2. A Massachusetts business trust formed pursuant to the Massachusetts business trust statute. | 2. Not a Massachusetts business trust or a Florida business trust formed pursuant to the Florida business trust statute. |
| 3. The beneficiaries had no individual control over the business in which their joint capital was involved. | 3. The individual beneficiaries had control inasmuch as the trustee could not execute any agreements without the written approval of 63% of the beneficiaries. |
| 4. Had a board of directors. | 4. Had no board of directors. |
| 5. The trustee had broad management power. | 5. The trustee had no management powers without the written consent of the beneficiaries. |
| 6. Had written certificates of participation issued. | 6. Had no written certificates of participation. |

Debtor also quotes *In re Order of Sparta*, 242 F. 235 (3d Cir. 1917), in support of the proposition that the new Bankruptcy Code includes land trusts. "Order of Sparta" was an unincorporated fraternal benefit association which was a business company in the business of issuing insurance certificates to members. It charged dues and in all areas operated as a separate legal entity. There seems little similarity between this fraternal benefit association and the land trust at bar.

The Court finds the case of *Pope & Cottle Co. v. Fairbanks*, 124 F.2d 132 (1st Cir. 1941), to be persuasive. Unlike the cases cited by debtor this case involved a "land trust." Several remarks from *Pope & Cottle Co.*, are on point:

Aside from the fact that the trust instrument gives the trust a formal name it does not appear that the Fairbanks Realty Trust is anything other than a family trust. *Id.* at 133.

If Congress had intended to include within its definition of "corporation" all trusts reduced to writing in which the trustees are empowered to conduct a business, it could easily have done so. *Id.* at 135.

The debtor seeks comfort from *Highway & City Drivers Local Union v. Gordon Transports*, 576 F.2d 1285 (8th Cir. 1978), where the court held that a labor union was within the definition of Section 1(8) of the Bankruptcy Act. However, labor union is a clearly distinct entity. Notes to the new Code indicate that the "unincorporated company or association" language of Sec-

tion 101(8) was intended to include labor unions. But the close, family, land trust of Norman Cohen does not resemble a labor union. The distinction was noted at page 1290 of *Highway & City Drivers Local Union, supra*, where the court quoted 1 Remington on Bankruptcy, § 92 at 161 (5th Edition), re the 1938 amendment to the Bankruptcy Act:

> The approach is now similar to that of the Federal Income tax provisions, under which syndicates, associations, and enterprises having all the essential attributes of corporation are treated as if they were corporations, otherwise, as partnerships.

The debtor here takes the position that he is a "partnership" for tax purposes, a "trust" for operating and Florida law purposes, and a "corporation" for bankruptcy purposes. Facts however dictate the form of existence rather than the whim and caprice of debtor.

## VII.

### THE TRUST AGREEMENT AND THE ACTIVITIES OF THE TRUSTEE.

The Trust Agreement herein is a classic land trust agreement and comports with forms prescribed for such. The Trust Agreement is precise in its description of the entity involved. Even after the deletion of paragraph 10 which specifically stated that the entity was not a "corporation de facto or de jure, or a Massachusetts trust, or any other type of business trust or an association in the nature of a corporation," there is nothing left in the Trust Agreement which suggests that it is anything other than what it purports to be: a land trust.

The Trust Agreement indicates that the Trustee holds the trust property "in trust . . . for the benefit of all present and future beneficiaries of this trust." (Paragraph 1, Trust Agreement). This is therefore a trust and not a corporation.

The only property owned by the trust is the real property mortgaged to AmeriFirst. All of the activities of the Trustee permitted in the instant agreement relate to the protection and conservation of the trust property. When the trust property is sold, the trust terminates. There is thus no ongoing business, and there is thus clearly no "business" then separate and apart from the "protection and conservation" of the trust property, and, indeed, no resulting "business" to *reorganize* pursuant to the purposes of Chapter 11.

The issue of whether or not an entity is, for tax purposes, a "business trust" and thus taxable as a "corporation" or a "partnership" and thus not taxable as a corporation has been addressed in many cases. *See, e. g., Morrissey v. Commissioner of Internal Revenue*, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935). The various factors in a business entity which determine whether or not it is a "corporation" or a "partnership" for tax purposes are relevant here. Indeed, by filing a tax return as a trust and not as a corporation or association the debtor endorses the proposition of a "trust."

The beneficiaries of the instant trust have for tax purposes urged that they are a "trust" and that therefore their interest and the entity can be taxed as a "partnership." Their desire was to avoid "double taxation" and to avoid a "corporate" income tax. The personal tax return of the beneficiaries indicate substantial benefits accruing to them in the form of interest deductions which were "passed through" to them. Were the entity a "corporation" this "pass through" would not be possible.

In contrast to the normal powers granted to a "corporation" in the Florida Statutes (Florida Statute 607.011 *General Powers*) the Trust Agreement gives the Trustee few powers without the written consent of 63% of the beneficiaries. For example, the trustee has (1) no power to sue and be sued or to complain and defend in the name of the trust all actions or proceedings, (2) no power to purchase, take, receive, lease, or otherwise acquire, own, hold, improve, use, and otherwise deal in and with real or personal property, (3) no power to sell, convey, mortgage, pledge, create a security interest in, lease, exchange, transfer and otherwise dis-

pose of all or any part of its property and assets, (4) no power to purchase, take, receive, subscribe for, or otherwise acquire, own, hold, vote, use, employ, sell, mortgage, lend, pledge, or otherwise dispose of or otherwise use in dealing with shares or other interests in obligations of other associations, or corporations, partnerships, etc., (5) no power to borrow money, (6) no power to make contracts, guarantees or incur liabilities, (7) no power to issue notes, bonds, or other evidence of indebtedness, (8) no power to lend money for corporate purposes, and (9) no power to pay pensions or establish pension plans, profit sharing plans, stock bonus plans, stock option plans, or other incentive plans for any and all of the trustees or beneficiaries.

As the Trust Agreement herein makes clear, the property cannot be dealt with for sale, mortgage, or pledge purposes except with the approval of 63% of the beneficiaries. The beneficiaries are not parties to this bankruptcy proceeding. There is a question then as to how the trustee (Norman Cohen, as debtor in possession) can control the property of the trust if the beneficiaries are not parties to the bankruptcy and it is the beneficiaries themselves who have the ultimate power of direction.

The debtor is stuck with the characteristics of the entity he has chosen. He cannot have it all ways in his favor. The debtor chose the form of entity which would provide for him the most favorable tax treatment and the most convenient method of operation. Having enjoyed the benefits of the trust form of existence, the "trustee" cannot now ignore the detriments—this land trust is simply not entitled to protection under the Bankruptcy Code.

## VIII.

### CONCLUSION

Jurisdiction of the Bankruptcy Court is statutory. In order for jurisdiction to exist, it must be found within the terms of the Bankruptcy Code. *In the Matter of Associated Developers Trust*, 2 B.C.D. 903 (Mass. 1976). The Court does not find jurisdiction

over the debtor here, hence the Motion to Dismiss is granted and the Petition in Bankruptcy filed by Debtor is dismissed in accord with the accompanying order.