**In the Matter of CAPTRAN CREDITORS TRUST,**
Debtor(s).

**Bankruptcy No. 85–45.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 3, 1985.

Kevin F. Jursinski, Fort Myers, Fla., for Joe Wear, Jr. & Michael Glantz.

Jeffrey Warren, Tampa, Fla., for petitioners.

## ORDER ON LEGAL NATURE OF CAPTRAN CREDITORS TRUST

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an involuntary Chapter 11 case and the matter under consideration is the eligibility vel non of the above-named Debtor for relief under Title 11. This case presents an interesting factual setting in that it is the Debtor, Captran Creditors' Trust (CCT), which seeks a dismissal of this case based upon its own ineligibility to be a Debtor. The facts as developed at the hearing on this matter may be summarized as follows:

On January 9, 1985 Captran Resorts International, Inc. (CRI) filed a Petition for Relief under Chapter 11 of the Bankruptcy Code. Subsequent to that filing, CRI, the creditors committee and the major secured creditors of CRI entered into a settlement agreement whereby the Chapter 11 case would be dismissed and a large portion of CRI's assets would be transferred to CCT for liquidation and distribution to the creditors of CRI. The settlement was approved by this Court and the case was dismissed.

CRI had been involved in the development and marketing of interval ownership, time-sharing resort projects. The assets transferred to CCT consisted of raw land, notes receivable, mortgages receivable, unit weeks at time-share projects, residual balances of accounts receivables assigned to factors, and five resort projects, all but one of which was completed and in the process of being sold as time-share units.

The Trust Agreement states the purpose of the Trust as follows:

> *"Purpose"* This Trust is organized for the primary purpose of liquidating the assets transferred to it with no objective to continue or engage in the conduct of a trade or business.

Creditors of CRI were given an option to participate in the Trust or not. Creditors were sent a large booklet (Cr.Ex. # 4) which set forth the settlement proposal and which closely resembles a prospectus found in the public offering of securities. Contained in the booklet was a document entitled "OPT IN—OPT OUT SHEET" which read as follows:

"Dear

After reviewing your letter of November 19, 1982, and all documents attached, I have decided to: (Check only A or B) A. ____-Opt In—By opting in, I understand that I become a settlor of the Captran Creditors' Trust and that I am bound by the terms of the Captran Creditors' Trust and have the right to look only to the assets purchased by the Captran Creditors' Trust from Captran, or collateral posted for the warranties in the Agreement, and I hereby recognize that by opting in, I hereby assign my debt to the Captran Creditors' Trust, and I will look only to the Captran Creditors' Trust and the Distribution Plan set forth in the Captran Creditors' Trust Agreement for collection of my debt, and I hereby covenant and agree not to pursue any remedy at law, equity or otherwise against Captran for the collection of this indebtedness. The Captran Creditors' Trust dated as of the 19th day of November, 1982, is incorporated by reference so as to make this single sheet a counterpart, and I execute this single page counterpart for the purpose of being bound by the terms of the Captran Creditors' Trust.

B. ____-Opt Out—By opting out, I understand that the Captran Creditors' Trust is being formed and certain assets are being sold to the Captran Creditors' Trust and that the Captran Creditors' Trust is assuming certain creditors' debts by disposing of assets. However, I do not want the Captran Creditors' Trust to collect my debt, and I desire to preserve my full rights to pursue Captran directly or otherwise exercise all legal rights and remedies.

Creditor: _____

Address: _____

Telephone: _____

Authorized Signature: _____

Title: _____ "'

Two trustees were named by the Trust Agreement: David W. McConnell (McConnell) and Gerard A. McHale, Jr. (McHale). The trustees could be removed under the terms of the Trust and successor trustees appointed by the written direction of the beneficiaries with a majority interest in the debt assumed by the Trust. Sometime after the Trust was formed, a Mr. Jack Grobowsky came to hold "proxies" representing a majority in interest and in November, 1982, removed McConnell and McHale as trustees and appointed Michael Glantz (Glantz) and Sylvia Steeves (Steeves) to serve as successor trustees. It is the petitioning creditors position that Mr. Grobowsky, without consideration for the rights of other creditors, directed Glantz and Steeves to sell off certain assets held by the Trust. It is this activity by the trustees which the petitioning creditors claim precipitated this case.

McConnell and McHale testified as to their activities while trustees as follows:

1. Sold mortgages to Berkley Federal Savings and Loan for cash and used the proceeds to pay creditors.

2. Entered into a contract with CRI whereby CRI would act as sales agent on time-share units held by CCT. The contract provided for a 38% commission to CRI on each sale.

3. Built two additional buildings at one of the projects. CRI acted as the developer on the project and arranged for zoning changes, etc. ...

4. Sold additional mortgages.

5. Paid out monies to some of the creditors pursuant to the Trust Agreement and retained some funds for future expenses.

Both McConnell and McHale testified that they acted so as to maximize the return to the beneficiaries. Their activities were designed to realize a greater return then would have been received had the assets been sold at auction.

While CCT maintains a separate bank account, it has no offices of its own, no employees, no business license, has not filed income tax returns, and has not obtained loans or been extended credit. The Debtor claims that the Trust is controlled by the trustees and that the beneficiaries have little control over the management of the Trust. However, inasmuch as the ben-

eficiaries have the ultimate power to remove a trustee, it appears to this Court that they exercise considerable control over the management of the Trust. In fact, it appears that the control exercised by one beneficiary, Mr. Grobowsky, has been extensive.

Based upon the foregoing, CCT claims it is not eligible for relief because it is not a person within the meaning of the Bankruptcy Code. Section 109 defines who may be a debtor.

§ 109. Who may be a debtor.

(a) Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title.

§ 101 defines who is a person for purposes of § 109.

§ 101. Definitions.

(33) "person" includes individual, partnership, and corporation, but does not include governmental unit . . .

Subsection 8 of § 101 defines a corporation as:

(8) "corporation"

  (A) includes

    (i) . . . . .

    (v) business trust . . .

The Code does not define a business trust, however, a number of courts have considered the question of eligibility of a particular trust. In *In re Treasure Island Land Trust*, 2 B.R. 332 (Bankr.M.D.Fla. 1980) the Court summarized the basic principles governing the question as follows:

"The basic distinction between business trusts and non-business trusts is that business trusts are created for the purpose of carrying on some kind of business or commercial activity for profit; the object of a non-business trust is to protect and preserve the trust res. The powers granted in a traditional trust are incidental to the principal purpose of holding and conserving particular property, whereas the powers within a business trust are central to its purpose."

*In re Dreske Greenway Trust*, 14 B.R. 618 (Bankr.E.D.Wis.1981); *In re North Shore Nat. Bank of Chicago, Land Trust No. 362*, 17 B.R. 867 (Bankr.E.D.Ill.1982); *Matter of Cohen*, 4 B.R. 201 (Bankr.S.D.Fla. 1980). Business trusts are eligible as debtors because Congress recognized the similarity between business trusts and corporations. *In re Old Second Nat. Bank of Aurora*, 7 B.R. at 37 (Bankr.N.D.Ill.1980).

The case of *In re Tru Block Concrete Products, Inc. Liquidating Trust*, 27 B.R. 486 (Bankr.S.D.Cal.1983) is similar to this case. In *Tru Block* the debtor was created for the purpose of liquidating Tru Block Concrete Products, Inc. It appears that sometime prior to the Trust filing its Chapter 11 petition, its predecessor, Tru Block Concrete Products, Inc. had begun to experience financial difficulties. In order to avoid bankruptcy, the corporation entered into an agreement with its creditors whereby the creditors agreed not to foreclose for a period of two years. In return, the corporation was given the same time to liquidate its assets and pay off its creditors. The Trust was formed to carry out the liquidation, however, the two year period proved overly optimistic and when the liquidation could not be completed in the two year time frame, the Trust filed for protection under Chapter 11.

The Court analyzed the legislative history surrounding § 101(8) as well as Federal tax law, California State law and cases decided under the Bankruptcy Code. In holding that the Trust was eligible for relief under the Bankruptcy Code, the Court noted that the cases which had held specific trusts not to be eligible for relief under Title 11 involved trusts commonly known as "simple land trust". In those cases, the trusts were formed to simply hold title to property and preserve the trust corpus for the benefit of the beneficiaries. See *In re Treasure Island Land Trust*, supra; *In re Cohen*, supra; *In re Cahill*, 15 B.R. 639 (Bankr.E.D.Pa.1981). In distinguishing those cases involving simple land trusts from the trust involved in the Tru Block case, the Court noted that the Tru Block

Trust was in actuality performing the final business of its predecessor corporation.

Similarly, the case at hand does not involve a debtor whose purpose is only to hold and protect the trust corpus. The Trust in this case was created for the purpose of carrying on its predecessors business, albeit that was simply to liquidate assets for the benefit of creditors. While the normal indicia of doing business are missing in this case, namely the lack of employees, separate offices, tax returns, etc., the activities of the original trustees were clearly business activities. In addition, while the Trust was not created for the purpose of generating a profit in the normal sense, the fact that the trustees were managing the assets in order to maximize the payoff to the creditors is sufficient to warrant the conclusion that the Trust in this case is a business trust. Clearly, had CRI been involved in the liquidation of the assets which it transferred to CCT, it would have been "doing business". There is no logic in altering that conclusion simply because the same activity is carried on by an entity called a trust.

The vast majority of cases which this Court reviewed in arriving at its decision involved an analysis of whether a particular trust was a simple land trust or whether it was formed in order to create profits. The facts presented by those cases, however, differ substantially from those presented by this case. This Court does not mean to suggest that all trusts created to liquidate the assets of an entity for the benefit of creditors is a business trust. However, when the trustee is enpowered to do more than simply auction the trust corpus and remit the proceeds to creditors and where the trustee does actually engage in activities normally carried on by its predecessor in interest in winding down or liquidating its business, there is no reason to conclude that it is not an entity eligible for relief. Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Captran Creditors' Trust is a debtor eligible for relief under Title 11 of the United States Code. Captran Credi-

tors' Trust shall have 10 days from the entry of this order to file an answer in this case. If an answer is not filed within 10 days, an Order for Relief shall be entered by this Court.