**In re ST. AUGUSTINE TRUST, Debtor.**

**Bankruptcy No. 89–03249–BKC–6C1.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Jan. 10, 1990.

Stanley Andrews, Titusville, Fla., for debtor.

Sara Kistler, Staff Atty., U.S. Trustee, Tampa, Fla.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This is a Chapter 11 case. The matter under consideration is a motion to dismiss filed by the United States Trustee. The motion was brought pursuant to 11 U.S.C. § 109 and alleges that the debtor, St. Augustine Trust, is a family trust and therefore ineligible for relief under the rehabilitative provisions of Title 11. The debtor contends that it is a business trust and therefore falls within the definition of "a person" as required by 11 U.S.C. § 109 and as defined by 11 U.S.C. §§ 101(35) and 101(8)(A)(v), respectively.

The Court conducted an evidentiary hearing on November 29, 1989. Based on the evidence adduced at the hearing, the Court finds the following facts relevant to the resolution of the controversy:

On September 21, 1984, Joseph M. Bruce, as settlor, and Robert Cooper Welsh, Jr., as trustee, executed a trust agreement dated January 7, 1982. The trust agreement, which created an entity known as St. Augustine Trust, provides for the transfer of certain real property from the settlor to the trustee, directs that two-thirds of all assets be divided into two equal trusts for the benefit of Bruce's minor children, and directs that the remaining one-third be divided into three separate trusts for the benefit of Bruce's two adult daughters and his stepson. (The stepson is Welsh, who is also the trustee).

The trust agreement further provides for the payment of annual net income to the beneficiaries and authorizes the trustee to make discretionary distributions for the "... health, support, education, maintenance an comfort of such persons at their accustomed standard of living." The trust agreement also authorizes the beneficiaries

to withdraw certain assets on demand, provides for the termination of the trust upon the attainment of a certain age, and absolutely restricts the beneficiaries' ability to transfer any interest in the trust.

Thus, it is clear from the trust documents that the trust was created and maintained for the benefit of Bruce's family; the continuity of the trust may be interrupted by the death or attainment of age of the beneficial owners; and the beneficiaries' interests are not freely transferrable.

By Bruce's admission, the trust was created as an estate planning device rather than for a distinct business purpose. The trust was initially funded by Mr. Bruce by the conveyance of real property to the trustee under the terms of the trust rather than by pooling resources of investors or beneficiaries or by selling shares. Thereafter, Bruce retained control of the trust assets. Bruce has continued to deal with the properties held by the trust as if they were his own, and the trustee serves as trustee in name only. Despite the broad grant of powers to the trustee under the agreement, the facts plainly establish that Bruce in fact controls the trust and has continued to manage the trust properties from his home—which is itself a trust asset.

Operating in this method, Bruce has developed some properties, including, among others, a movie theatre in Orlando and a warehouse/office complex in Jacksonville. It is without dispute, therefore, that the trust engages in real estate development. At the time of filing here, the trust held title to developed and undeveloped properties that it values at $2,710,000.

It is also clear that the trust has no employees or business office, other than Bruce's home. Other than by Bruce himself, there is no independent, centralized management of the trust.

Finally, it is also apparent that the trust was never registered with the State of Florida as a business trust as required by Chapter 609, *Florida Statutes.*

Based on these facts, the United States Trustee asserts that the debtor is a family trust that is not entitled to relief. The United States Trustee asserts that the fact that the debtor happens to engage in some business activity does not change the result. The debtor contends, however, that under the provisions of the Bankruptcy Code, it is sufficient that a trust be engaged in business in order to be considered a "business trust." The parties have therefore joined issue on this point.

■ A debtor's eligibility for relief under Title 11 is specifically addressed in Section 109 of the Bankruptcy Code. It provides in pertinent part:

§ 109 Who may be a debtor.

(a) Notwithstanding any other provision of this section, only a *person* that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title. (emphasis added).

A "person" is defined in 11 U.S.C. § 101(35):

(35) "person" includes individual, partnership, and corporation, but does not include governmental unit, ...

Finally, the Code provides in Section 101(8)(A)(v) that a "corporation ... includes ... [a] business trust."

In construing these provisions, many courts have referred to *Morrissey v. Commissioner,* 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935), where the United States Supreme Court established the following characteristics that distinguish a business trust:

1. a trust created and maintained for a business purpose;

2. title to property held by trustee;

3. centralized management;

4. continuity uninterrupted by death among beneficial owners;

5. transferability of interests; and

6. limited liability.

*See In re Vivian A. Skaife Irrevocable Trust Agreement No. 1,* 90 B.R. 325 (Bankr.E.D.Tenn.1988); *Mosby v. Boatmen's Bank of St. Louis County (In re*

*Mosby)*, 61 B.R. 636 (E.D.Mo.1985), *aff'd* 791 F.2d 628 (8th Cir.1986). Of course, any inquiry into the nature of the debtor here and its eligibility for relief under Title 11 must begin with an examination of the trust documents. *Skaife*, 90 B.R. at 328.

It is readily evident upon reviewing the instant trust agreement that the trust was intended for the personal needs, use, and benefit of Bruce's family rather than any business purpose. This purpose is further shown by Bruce's testimony as to why the trust was established and the evidence of how the trust is operated.

Likewise, the documents and the trust's methods of operation show that the trustee plays no significant role in the trust's management and operation, there is no centralized management other than Bruce, there is no business office and no employees. The documents show that continuity is interrupted upon death and there is no ready transferability of beneficial interests.

In short, the trust is nothing—more or less—than Bruce and his estate plan.

Once he established the trusts, Bruce chose to preserve the trust res and to generate capital and income for the benefit of his family by engaging in real estate development activities—an active form of investment—rather than investing in more traditional, passive forms of investment, such as common stock or other securities, certificates of deposit, and the like. The fact that Bruce chose this active form of investment rather than a passive one, however, does not change the fundamental purpose or nature of the trust entity. "The mere fact that the settlor intended to enhance the assets through commercial activity does not equate this entity with a corporation, and therefore, bring it within the scope of § 101(8)." *In re Milani Family Irrevocable Trust*, 62 B.R. 6 (Bankr.S.D. Fla.1986).

In support of its position that St. Augustine Trust is a business trust, debtor relies on *In re Gonic Realty Trust*, 50 B.R. 710 (Bankr.D.N.H.1985), and *In re Arehart*, 52 B.R. 308 (Bankr.M.D.Fla.1985). The *Gonic* Court, which held that the trust in question was a "business trust," based its decision on the fact that the trustee was granted broad powers to deal with the trust property and, on the date of filing, was operating a business. As pointed out in *Skaife*, however, "... a business Trust is more than simply a Trust that carries on business." 90 B.R. at 328 *citing Hecht v. Malley*, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949 (1924). The inquiry must focus on the trust documents and the totality of the circumstances, not solely on whether the trust engages in a business. This Court therefore finds *Skaife* to be persuasive, at least on these facts. The Court also finds the *Arehart* decision to be distinguishable for the same reasons.

■ Finally, under the law of Florida, business trusts are regulated by, and required to obtain a certificate from, the Florida Department of State. Fla.Stat. Ch. 609 (1987). *In re Robert A. Johnson*, 82 B.R. 618 (Bankr.S.D.Fla.1988). *See also Milani Family Irrevocable Trust*, 62 B.R. at 7. While failure to register with the State of Florida is certainly not dispositive of whether a trust is eligible for relief under Title 11, it is a factor to be considered when analyzing the nature of a trust. *In re Treasure Island Land Trust*, 2 B.R. 332 (Bankr.M.D.Fla.1980). Here, of course, the failure of the trust to register under the statute is completely consistent with Bruce's and the trustee's intent that this be a personal, family trust and their conduct in operating the trust as a personal, family trust.

Based on the totality of the facts and circumstances of this case, the Court concludes that the debtor is a family trust rather than a "business trust" as contemplated by 11 U.S.C. § 101(8)(A)(v). The Court further concludes that the mere fact that the trust happens to engage in business activities does not therefore make it a "business trust" within the meaning of the Code. Accordingly, the debtor is not entitled to the relief sought, and the case must be dismissed.

The Court further concludes that it has jurisdiction over the persons and the subject matter pursuant to 11 U.S.C. §§ 101 *et seq.*, 28 U.S.C. § 1334, 28 U.S.C. § 157(a),

and the standing order of reference entered by the District Court. The Court further concludes that this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) so that the undersigned United States Bankruptcy Judge has judicial power and jurisdiction to enter appropriate orders and judgments. Further, this is a contested matter as defined by Bankruptcy Rule 9014.

This memorandum opinion constitutes findings of fact and conclusions of law as required by Bankruptcy Rules 9014 and 7052. In accordance with Bankruptcy Rule 9021, the Court is entering contemporaneously a separate judgment of dismissal.