**In re MORGANTOWN TRUST NO. 1, Debtor.**

**Bankruptcy No. 93–10374.**

United States Bankruptcy Court, N.D. West Virginia, Clarksburg Division.

June 3, 1993.

Calvin Wood, Morgantown, WV, for debtor.

Robert W. Trumble, Martinsburg, WV, for creditors.

## MEMORANDUM OPINION AND ORDER

. L. EDWARD FRIEND, II, Bankruptcy Judge.

On April 12, 1993, Morgantown Trust No. 1 ("the debtor") filed its Chapter 11 petition in bankruptcy. During a hearing on a motion for relief from stay, the Court questioned counsel for the debtor regarding the ability of a trust to file a Chapter 11 petition in bankruptcy. Thereafter, the Court ordered counsel for the debtor to submit a memorandum of authorities which addresses the issue of whether a trust may be a debtor eligible for relief in bankrupt-

cy. The United States Trustee and the trust's only creditor have also filed memoranda with the Court addressing the issue.

Section 109 of the Bankruptcy Code defines who may be a debtor. It states: "Notwithstanding any other provision of this section, only a *person* that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title." 11 U.S.C. § 109(a) (emphasis added). Section 101(41) of the Bankruptcy Code defines "person" to include individuals, partnerships, and corporations. 11 U.S.C. § 101(41). Subsection 101(9) defines corporation to include "business trust." 11 U.S.C. § 101(9).

The Morgantown Trust # 1 trust instrument contains the following relevant language:

(1) ... The objects and purposes of this Trust shall be to hold title to the trust property.... The Trustee shall not manage or operate the trust ... nor shall the Trustee transact business of any kind with respect to the Trust property which may cause this Agreement to be deemed to be, or which [may] create or evidence the existence of a corporation (de factor or de jure); or a Massachusetts trust, or any other type of business trust....

This is to be a "land" trust, set up for the support of the beneficiary, and successors and/or assigns. It is not to be subject to any debts, liens, judgments or any other claim.... For the purposes herein stated, the law regarding "spendthrift" trusts are incorporated by reference herein, as though fully stated....

. . . . .

(3) ... the interests of any such Beneficiary hereunder shall consist solely of a power of direction to deal with title to the Trust property and the right to receive or direct the disposition of the proceeds from the rentals and from the

mortgages, sales, or other disposition of said premises, and the right to lease, manage, and control said property as hereinafter provided. The right in the avails and proceeds of the property shall be deemed to be personal property and may be so treated for all purposes....

. . . . .

(6) *Tax returns.* The Trustee shall not be obligated to file any income, profit, or other tax reports or schedules or returns with respect to this Trust as may be required by law. The Beneficiaries shall individually report and pay any and all taxes on the earnings, avails, and proceeds of the Trust property or otherwise arising out of their respective interests hereunder....

. . . . .

(9) This Agreement shall not be placed on record in the recorder's office of the county in which the Trust property is situated, or elsewhere....

(10) ... It is the intent that this be a "spendthrift" trust.[1]

. . . . .

(12) ... The Trustee will deal with said property only when authorized to do so in writing, and ... it will, on the written direction of: a majority in interest of the beneficiaries hereunder ..., make and execute contracts or deeds for the sale of, execute mortgages, leases, or options on, or otherwise deal with, the said real estate or any part thereof, and with any other Trust property also subject to this Agreement, and with the disposition of the proceeds from any rentals, mortgages, insurance, sales, or other disposition of said premises upon such terms and conditions as may be directed....

(13) ... The Beneficiaries hereunder shall have and retain ... the management of Trust property and control the renting, handling, maintenance, encumbering, selling, or making of any other

---

**1.** West Virginia recognizes "spendthrift trusts." W.Va.Code § 36–1–18, 17 M.J. Spendthrift Trusts §§ 1–3. However, a person cannot establish a trust for his own benefit as a beneficiary which places his assets beyond the reach of his credi-

tors. *United States v. Ritter,* 558 F.2d 1165, 1168 (4th Cir.1977). In the instant case, it appears as if the settlor and the beneficiary are one and the same.

disposition thereof.... The Trustee shall not be called upon to do anything with respect to the management or control of said property, the payment of taxes or assessments, insurance litigation, or otherwise, except on written direction of the Beneficiaries as provided herein, and after the payment of all monies necessary to carry out said instructions.[2]

(18) *Governing Law.... State of West Virginia....*

The sole issue for this Court's consideration is whether Morgantown Trust # 1 may be a debtor eligible for relief in bankruptcy.

The court in *In re Medallion Realty Trust,* 103 B.R. 8 (Bankr.D.Mass.1989), *aff'd,* 120 B.R. 245 (D.Mass.1990) discussed, in general, the history of the eligibility of trusts to file for bankruptcy relief and the tests which other courts have used in defining a "business trust." A recap of the history as told by the court in *Medallion Realty* follows: In denying general eligibility to trusts, Congress presumably viewed such arrangements as being much like estates in that they are typically enmeshed in an estate plan and under the control of the state courts. However, Congress apparently recognized that a trust which is not part of a settlor's estate plan presents different considerations. Not only is probate court not its traditional forum, but also its beneficiaries are investments in a business enterprise rather than recipients of a settlor's generosity. In 1926, Congress amended the Bankruptcy Act to allow bankruptcy relief for "any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument (the traditional Massachusetts business trust)." *Id.* at 11 (parenthetical added). Congress' ultimate adoption, in 1978, to include the simple phrase "business trust" and to omit further requirements, indicates a further reduction of the trust restrictions. *Id. (citing In re Trea-*

*sure Island Trust,* 2 B.R. 332 (M.D.Fla. 1980)).

In its discussion of the tests which courts have applied, the court in *Medallion Realty* indicated a keen conflict among the various courts:

The decisions are sharply, and perhaps hopelessly, divided on the meaning of "business trust." Some, following the pattern established under the prior Act, hold that it means a trust which is deemed a corporation for federal income tax purposes under the test enunciated in *Morrissey v. Commissioner,* 296 U.S. 344, 359, 56 S.Ct. 289, 296, 80 L.Ed. 263 (1935), namely a trust having (i) business functions, (ii) transferable certificates of beneficial interest, (iii) centralized management, (iv) continuity of life and (v) limited liability. *E.g., Mosby v. Boatmen's Bank of St. Louis County (In re Mosby),* 61 B.R. 636 (E.D.Mo.1985), *aff'd per curiam* 791 F.2d 628 (8th Cir.1986); *In re Vivian A. Skaife Irrevocable Trust Agreement # 1,* 90 B.R. 325 (Bankr.E.D.Tenn.1988); *In re Betty L. Hays Trust,* 65 B.R. 665 (Bankr.D.Neb. 1986); *In re L & V Realty Trust,* 61 B.R. 423 (Bankr.D.Mass.1986). Others look to the trust's operations to determine whether they include substantial business activities, disregarding the terms of the creating document. *E.g., In re Arehart,* 52 B.R. 308 (Bankr.M.D.Fla.1985) (land trust with some business activities deemed eligible); *In re Gonic Realty Trust,* 50 B.R. 710 (Bankr.D.N.H.1985) (trust created for benefit of trustee and his wife which owned and leased a mill complex deemed eligible); *In re Dolton Lodge Trust No. 35188,* 22 B.R. 918 (Bankr.N.D.Ill.1982) (land trust with no business activities ineligible); *In re Dreske Greenway Trust,* 14 B.R. 618 (E.D.Wis.1981) (trust created to conduct business which in fact did so deemed eligible); *In re Cohen,* 4 B.R. 201 (Bankr.S.D.Fla.1980) (land trust held ineligible where it conducted minimal zoning and filling activities); *In re Treasure*

---

**2.** This section requires the consent of the Beneficiary to file the Chapter 11 petition. There is no consent in the file.

*Island Land Trust,* 2 B.R. 332 (M.D.Fla. 1980) (land trust ineligible where declaration of trust prohibited business activities and trust was then engaging in none).

*See Medallion Realty,* 103 B.R. at 10, 11.

Unlike the tests which make up the split of authority described hereinabove, the court in *Medallion. Realty* applied the test of "whether the trust was created to transact business for the benefit of investors." *Id.* at 11. Its rationale was that this test was certain to deny bankruptcy relief to the traditional donative trust created for the benefit of family members. *Id.*

Notwithstanding a particular trust's ability to meet this test, the court in *Medallion Realty* also looked to the actions of the trustee. Where the trustee acted under the direction of the holders of a majority of the beneficial interests, such is a prime indicia of his acting in the capacity of an agent, not a trustee. Quoting 1 A. Scott and W. Fratcher, *The Law of Trusts,* § 8 at 88, 95 (4th ed. 1987), the court stated

An agent acts for, and on behalf of, his principal and subject to his control; a trustee as such is not subject to the control of his beneficiary, although he is under a duty to deal with the trust property for the latter's benefit in accordance with the terms of the trust, and can be compelled by the beneficiary to perform this duty. The agent owes a duty of obedience to his principal; a trustee is under a duty to conform to the terms of the trust. . . .

A person may be both agent of and trustee for another. If he undertakes to act on behalf of the other and subject to his control he is an agent; but if he is vested with the title to property that he holds for his principal, he is also a trustee. In such a case, however, it is the agency relation that predominates, and the principles of agency, rather than the principles of trust, are applicable.

*See Medallion Realty* at 12. The court stated that because the trustee of the debtor could not take any action unless specifically directed to do so by a majority of the holders of the beneficial interests, and be-

cause he was required immediately to pay over all income to the beneficiaries, the "so-called 'trust' is a creature of the beneficiaries and a mere conduit for their income." *See Medallion Realty* at 12. Such relationship could not amount to one of trustee-beneficiary.

Like *Medallion Realty,* the court in *Village Green Realty Trust,* 113 B.R. 105 (Bankr.D.Mass.1990) also discussed historical judicial considerations of whether trusts are eligible to file bankruptcy. Citing *In re Ponn Realty Trust,* 4 B.R. 226 (Bankr. D.Mass.1980) and *In re G–2 Realty Trust,* 6 B.R. 549 (Bankr.D.Mass.1980), the court in *Village Green* stated that, even where a trust is a business trust with transferrable shares, "where the trust appears to be created solely for the benefit of family members and does not involve any 'business,' as that term is commonly understood, or unsecured creditors, it is ineligible to be a debtor regardless of what it is labeled." *See Village Green* at 110. Prepetition activities of a questionable nature will also be cause for a trust's dismissal as an ineligible debtor. *Id.*

However, the court in *Village Green* stated further that prior to a determination of the substance of a trust arrangement, courts must first look to state law for guidance regarding the definition of a business trust. *Id.* at 113 (*citing Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)). To this end, the court appeared to find that, at a minimum, a trust must first meet applicable state statutory requirements of business trusts. Only then, may it look at the trust's substance to determine that such trust may be eligible for bankruptcy relief. *See Village Green,* 113 B.R. at 113. *See also In re Mohan Kutty Trust,* 134 B.R. 987, 989 (Bankr.M.D.Fla.1991).

Although bankruptcy courts routinely look to substance over form, this Court, unlike the *Medallion* court, cannot ignore the nominee trust's inability to qualify as a Massachusetts business trust under state law. . . . In short, the Court will not squeeze itself into the keyhole to open the door to bankruptcy protection

when the beneficiaries of a nominee trust hold the key.... This approach, in addition to the benefit of simplicity, eliminates substantive and procedural concerns stemming from the disregard of the trust vehicle by the court, particularly where the intent to operate as a partnership or sole proprietorship is problematic. It also may obviate consideration of the related issue of good faith that all too frequently arises in these cases, and it certainly avoids the ironic result of appearing to reclassify as another entity a trust that resembles a corporation and is held out to the public as an operative trust, if properly recorded....

See *Village Green*, 113 B.R. at 114, 115.

Although the court in *Village Green* found in the trust's language indicia of the operation of a business trust (thus, supporting the conclusion that Village Green is eligible to be a debtor under the Code), because "the court [was] bereft of evidence with respect to whether or not the certificates of beneficial interest [were] transferrable," as required by state law, the court was unable to make a determination that Village Green was a business trust. *See Village Green* at 115.

However, the court in *In re Arehart*, 52 B.R. 308 (Bankr.M.D.Fla.1985) found the lack of registration, as required by state law, to be without legal significance. The *Arehart* court stated that whether an entity is eligible for relief under the Bankruptcy Code is purely a matter of Federal law.

To hold otherwise would result in different results in different states and an entity would be eligible for relief in one state but not in another. Clearly this is not what Congress intended when it enacted the bankruptcy laws in this country in conformity with the mandate of Article I, § 8, Cl. 4 of the Constitution, which provides that "Congress shall have the power ... to establish ... uniform laws on the subject of bankruptcies."

*Id.* at 310, 311.[3] Upon this basis, the court was satisfied, notwithstanding the lack of state required registration, that the trust was created for the purpose of carrying on a business or commercial activity for profit and was, thus, a business trust eligible for relief under the Bankruptcy Code. *Id.*

 This Court agrees primarily with the rationale in *Village Green*. To place the onus upon those who created the trust of complying with state law regarding the structuring of a trust, is not a burdensome requirement. To discourage forum shopping activity, a party seeking relief under the Bankruptcy Code should not be permitted to receive more from this Court than it otherwise would in state court. Notwithstanding that, while the mere failure to comply with a state law technicality may not be entirely dispositive of whether a trust is eligible for relief in bankruptcy, this Court shall consider such non-compliance a significant factor in analyzing the nature of a trust. *See In re St. Augustine Trust*, 109 B.R. 494, 496 (Bankr.M.D.Fla. 1990). Where non-compliance with state law appears consistent with the settlor's intent that the trust not be a "business trust," such trust shall be considered ineligible for relief in bankruptcy. *See St. Augustine* at 496.

 The following factors seem most prevalent among the cases which declined to find the existence of a business trust under a particular set of circumstances:

---

3. This Court questions the principal which the court in *Arehart* set forth. As stated by the United States Supreme Court, it is an established principal of Bankruptcy law that bankruptcy courts must look to state law for guidance. *See Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). As an example of this principal, in determining whether a bankruptcy court may permit a bankruptcy trustee to avoid a transfer under Bankruptcy Code § 544, a court must look to state law to determine, in certain circumstances, whether a hypothetical bona fide purchaser could have perfected an interest in property, notwithstanding that a previous purchaser purchased such property in good faith, but neglected to perfect its interest. If state law would permit the bona fide purchaser to perfect, gaining a superior interest over the previous good faith purchaser, then such transfer may be avoided. If state law would not allow such bona fide purchaser's perfection, then the trustee may not avoid such transfer. This is but one example of a circumstance in which state law would cause results in bankruptcy to vary from state to state.

- admissions by the settlor that the trust was created as an estate planning device rather than for a distinct business purpose;
- initial funding by the settlor by the conveyance of real property to the trustee under the terms of the trust rather than by pooling resources of investors or beneficiaries or by selling shares;
- the settlor retaining control of the trust assets;
- the settlor continuing to deal with the properties held by the trust as if they were his own;
- the trustee serving as trustee in name only;
- despite the broad grant of powers to the trustee under the agreement, the facts establish that the settlor in fact controls the trust and has continued to manage the trust properties;
- the trust has no employees or business office; and
- the trust did not comply with state law.

*See In re St. Augustine Trust*, 109 B.R. 494 (Bankr.M.D. Fla.1990). The court in *Matter of Walker*, 79 B.R. 59, 61 (Bankr. M.D.Fla.1987) (*citing In re Universal Clearinghouse Company*, 60 B.R. 985, 991 (Bankr.Utah 1986) and *In re Armstead and Margaret Wayson Trust*, 29 B.R. 58 (Bankr.Md.1982)) noted that

The primary consideration in most cases has been the overt purpose of the trust. If its purpose is to protect the trust res, the trust is found to be ineligible for bankruptcy protection. If the purpose is profit oriented, the trust is found to be an eligible business trust ...

. . . .

.The business trust is a voluntary pooling of capital by a number of people who are the holders of freely transferrable certificates evidencing beneficial interests in the trust estate. The holders are entitled to the same limitation of personal liability extended to stockholders of private corporations. Because of the similarity, Congress has afforded the business trust the same privileges in bankruptcy as a private corporation....

Another purpose for which a trust may be created which courts have recognized as valid for bankruptcy relief purposes, is one "created for the purpose of carrying on its predecessor's business, albeit that was simply to liquidate assets for the benefit of creditors." *In the Matter of Captran Creditors Trust*, 53 B.R. 741 (Bankr. M.D.Fla.1985).

While the normal indicia of doing business are missing in this case, namely the lack of employees, separate offices, tax returns, etc., the activities of the original trustees were clearly business activities. In addition, while the Trust was not created for the purpose of generating a profit in the normal sense, the fact that the trustees were managing the assets in order to maximize the payoff to the creditors is sufficient to warrant the conclusion that the Trust in this case is a business trust. Clearly, had [the business which formed the trust] been involved in the liquidation of the assets which it transferred to [the trust], it would have been "doing business". There is no logic in altering that conclusion simply because the same activity is carried on by an entity called a trust.

... This Court does not mean to suggest that all trusts created to liquidate the assets of an entity for the benefit of creditors is a business trust. However, when the trustee is [empowered] to do more than simply auction the trust corpus and remit the proceeds to creditors and where the trustee does actually engage in activities normally carried on by its predecessor in interest in winding down or liquidating its business, there is no reason to conclude that it is not an entity eligible for relief....

*Id.* at 744.

There are also cases which specifically address whether a "land trust" may qualify as a "business trust." In addition to Bankruptcy Code § 101(9) which implies a distinction among different trusts, the court in *In re Northshore National Bank of Chicago, Land Trust No. 362*, 17 B.R. 867, 869 (Bankr.N.D.Ill.1982) also looked at

the purpose of the Bankruptcy Code which is

> to provide a debtor with a fresh start by discharging his debts and allowing him to continue to function in the business community. This fresh start concept of the Code ultimately benefits society because the debtor has an opportunity to be a self-sufficient entity rather than a continuing burden on society. The Illinois land trust, however, is not, and does not attempt to be, an active business or commercial entity. *In re Old Second National Bank of Aurora, supra* [7 B.R. 37 (Bkrtcy.N.D.Ill.1980)]. It is merely a legal device whose primary function is to hold legal and equitable title to real estate. Since the Illinois Land Trust is not a viable entity which may provide some benefit to society, it does not comport with the fresh start concept of the Bankruptcy Code, and accordingly it is not entitled to relief under the Code.

In denying "business trust" status to a "land trust," the court in *In re Treasure Island Land Trust*, 2 B.R. 332 (Bankr. M.D.Fla.1980) stated that, even where the trust shared several characteristics with a corporation, its substance nonetheless did not resemble that of a business trust.[4] In making its finding, the court first looked at the language of the trust instrument which itself rejected any construction of it as a business trust. In *Treasure Island*, the trust specifically noted that

> its objective was to hold title to the trust property and to protect and serve it;

> the trustee was not to manage or operate the trust property;

> the trustee was not to transact business of any kind; and

> the agreement was not to have been deemed to be, nor create or evidence the existence of a corporation *de facto* or *de jure*, or a Massachusetts trust, or any other type of business trust.

*Id.* at 334. Other factors which the court considered included the debtor's conduct and assertions contrary to its position, the petition listing no trade creditors or other debts that customarily result from the conduct of business, and the unsecured creditors being principally the accountants and the lawyers. *See Treasure Island* at 335. *See also In re Dolton Lodge Trust No. 35188*, 22 B.R. 918 (Bankr.N.D.Ill.1982).

■ As the court in *In re St. Augustine Trust*, 109 B.R. 494, 496 (Bankr.M.D.Fla. 1990) stated so succinctly, "a business trust is more than simply a trust that carries on business." (*citing Hecht v. Malley*, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949 (1924)). "The inquiry must focus on the trust's documents and the totality of the circumstances, not solely on whether the trust engages in a business." *See St. Augustine*, 109 B.R. at 496.

■ Based upon the aggregate of published case law, this Court finds that the Morgantown Trust # 1 is clearly not a business trust. Although there are certain contradictions within the trust agreement as set forth at the beginning of this opinion above, the plain language of the instrument itself seems to indicate that

- the trust was not created to transact business for the benefit of the investors (*See Medallion Realty; See also Village Green*);
- the beneficiaries seem to have significant management and control of the trust, and the trustee/beneficiary relationship appears to be more like that of agent/principal (*See Medallion Realty; See also St. Augustine*);
- there is no evidence that there has been any compliance with West Virginia law which requires certain recordations (*See* W.Va.Code § 47–9A–1, et seq. (1992); *See also Village Green* and *St. Augustine*);
- the initial funding of the trust appears to be a conveyance of real property rather than by pooling resources of

---

**4.** The trust in *Treasure Island* was not created by the grant of a settlor, but was formed through the voluntary association of unrelated persons and subscriptions sold through a prospectus, "The 'beneficial interests' are very much like shares in that they are equal in value, held by a large number of people in varying amounts and are transferrable." *Id.* at 334.

investors or beneficiaries or by selling shares (*See St. Augustine*);

- the trust appears to have no employees or business office (*See St. Augustine*);
- the trust does not appear to have been created for the purpose of carrying on the winding-up of affairs of a predecessor business (*See Captran Creditors*); and
- the trust appears to be a land trust (*See Northshore National Bank; Treasure Island*; and *Dolton Lodge*).

Based upon the express terms of the trust documents and the totality of the circumstances, in substance, the subject trust is not a business trust eligible for bankruptcy relief. Therefore, this Court concludes that the Morgantown Trust No. 1 is ineligible to be a debtor. Accordingly, the case is **DISMISSED** and it is **SO ORDERED.**

The Clerk is directed to transmit copies of this Order to the parties in interest.