**In re G-2 REALTY TRUST, Debtor.**

**Bankruptcy No. 80–00579–L.**

United States Bankruptcy Court,
D. Massachusetts.

Oct. 8, 1980.

---

**550**

William F. Macauley, Joanne M. Neale, Richard P. Campbell, Craig & Macauley, Boston, Mass., for debtor, G–2 Realty Trust.

Robert Somma, Gary R. Greenberg, Goldstein & Manello, Boston, Mass., for United States Trust Co.

Herbert C. Kahn, Boston, Mass., for petitioning creditors.

## MEMORANDUM RE MOTION TO DISMISS

THOMAS W. LAWLESS, Bankruptcy Judge.

On April 17, 1980, an involuntary Chapter 11 proceeding was filed against G–2 Realty Trust ("G–2 Realty") by three of its unsecured creditors.[1] United States Trust Company (the "Bank"), a secured creditor of G–2 Realty, filed a motion to dismiss the proceedings on April 30, 1980. In its motion the Bank asserts that the involuntary petition was the result of collusion between G–2 Realty and the petitioning creditors, and that therefore the filing must be found to have been filed in bad faith. Furthermore, the Bank contends that even apart from the alleged collusion, the proceedings must be dismissed since G–2 Realty is not an entity eligible for relief under Chapter 11 of the Bankruptcy Code.

An evidentiary hearing was held on the Bank's motion to dismiss on June 10, 1980. A memorandum in support of the motion was filed by the Bank and memoranda in opposition thereto have been filed by both G–2 Realty and the petitioning creditors.

For the reasons set forth below, I find that the Bank's motion to dismiss should be granted.

G–2 Realty was established as a Massachusetts nominee trust under a Declaration of Trust by Sydney Kline and Richard M. Mandell on January 31, 1973. Since 1976 the beneficial interests in the trust have been held by Kline (75%) and one Robert E. Goodman (25%). Subject to the terms of the trust these beneficial interests were neither assignable or transferable.[2] Kline has served as the sole trustee of the trust since 1977 when Mandell resigned.

In June, 1977 G–2 Realty executed a promissory note in favor of the Bank in the amount of $1,195,615 plus interest[3] in return for a construction loan granted to it by the Bank. To secure the payment of the promissory note, G–2 Realty granted the Bank a mortgage and security interest in an office building owned and leased as lessor by G–2 Realty, as well as an assignment of rents from and the lessor's interest in the office building. In November, 1979 after G–2 Realty had defaulted in its payment obligations under the promissory note, the Bank and G–2 Realty agreed that the Bank would begin collecting the rentals directly from the tenants of the office building. Shortly thereafter, the Bank took possession of the office building, operated the building as a mortgagee in possession[4] and commenced foreclosure proceedings. A foreclosure sale on the office building was scheduled for April 23, 1980.

Subsequent to the commencement of the foreclosure proceedings by the Bank, Kline and Goodman, the only beneficiaries of G–2 Realty, executed a document amending the trust's Declaration of Trust. This amendment, which was executed on March 24,

---

1. The three petitioning creditors are Allen & Demurjian, Inc., North End General Contractors, Inc., and James T. Hughes, Inc.

2. The trust was amended in 1977 to provide that under certain circumstances the beneficial interests were made transferable. No party suggests, however, that this amendment had any effect on G–2 Realty's status as a nominee trust.

3. The Bank asserts that as of the date of the involuntary petition, the balance due under the promissory note was $1,307,164.19.

4. At present the Bank continues to operate the office building as mortgagee in possession.

1980, provided that G–2 Realty was to be a business trust and that the beneficial interests of the trust were to be fully transferable. The amendment further provided that the beneficial interests in the trust were to be divided into 1000 shares, and that these shares were to be held by Kline and Goodman in the proportion to their respective interests in the trust. Thus, Kline was to hold 750 shares and Goodman 250. Kline, as the sole trustee of G–2 Realty, assented to the amendment and filed the appropriate document with the Commonwealth on April 10, 1980.

Thereafter, on April 17, 1980, as noted above, the involuntary petition under Chapter 11 of the Bankruptcy Code was filed against G–2 Realty by three of its creditors. Upon the filing of the involuntary petition, the foreclosure proceedings including the sale were stayed pursuant to § 362 of the Code.

At the conclusion of the hearing held on June 10, 1980, this Court ruled that the Bank had failed to adduce sufficient evidence to demonstrate that there had been collusion between G–2 Realty and the petitioning creditors in the filing of the involuntary petition. Further review and examination of the transcript reveals no reason to depart from this Court's ruling rejecting that argument as a basis for dismissal of the involuntary petition.

Therefore, the only issue before the Court at this time is whether under the circumstances of this case G–2 Realty is eligible to be a debtor under Chapter 11 of the Bankruptcy Code.[5]

The Bank argues that .G–2 Realty effected the change in legal structure from a nominee trust to a business trust solely to become eligible as a debtor under Chapter 11 of the Code. The Bank points out that as a nominee trust, G–2 Realty was not eligible for relief under the Code, and aware of that fact and in the midst of severe financial difficulties (i. e. facing an imminent foreclosure on substantially all of its assets), G–2 Realty changed its form to a business trust. The Bank contends that this change was accomplished not for any legitimate business purpose, but rather to delay the foreclosure sale and to prevent the Bank from exercising its lawful rights. Arguing that such motives are inconsistent with the purpose of a Chapter 11 proceeding and evidences bad faith by G–2 Realty, the Bank urges the Court to dismiss the involuntary petition.

In response to the Bank's position, G–2 Realty contends that in its present form as a business trust with transferable shares, it is clearly eligible to be a debtor under Chapter 11, and that its change to a business trust was in no way motivated by bad faith. Rather, G–2 Realty maintains that the evidence adduced at the hearing amply demonstrates that it effected the change to a business trust for legitimate business purposes, and that, in fact, the change in form was contemplated prior to any attempt by the Bank to enforce its security interest in the collateral. Moreover, G–2 Realty asserts that even if the Court determined that G–2 Realty had initiated the change solely to obtain relief under the Code, that fact alone does not require a finding of bad

---

5. G–2 Realty and the petitioning creditors have raised a procedural issue asserting that pursuant to § 303(j) of the Code, the Bank lacks standing to bring the motion to dismiss. This argument, however, is without merit. Section 303(j) does not in any way attempt to limit which parties may properly bring a motion to dismiss an involuntary petition. Rather, that section simply provides that where an involuntary is sought to be dismissed by a petitioning creditor, by consent between the petitioning creditors and the debtor, or through a lack of prosecution by the petitioning creditors, dismissal may only take place after all creditors have received notice and an appropriate hearing has been held. The obvious import of this section, as reflected in the legislative history, is to prevent collusive settlements by the debtor and the petitioning creditors by insuring that all creditors are aware that the involuntary may be dismissed. (See, House Report No. 95–595, 95th Cong., 1st Sess. (1977) 324, U.S. Code Cong. & Admin.News 1978, p. 5787; Senate Report No. 95–989, 95th Cong., 2d Sess. (1975) 35, U.S.Code Cong. & Admin.News 1978, p. 5787.) Moreover, under § 1112(b) of the Code, the Bank "as a party in interest" is clearly granted the standing to seek a dismissal of any proceeding brought under Chapter 11.

faith and a dismissal of the proceedings. Instead, G–2 Realty argues that in light of the fact that this is an involuntary proceeding the Court should consider a variety of factors, the most important of which is the rights of the petitioning creditors, before it decides to dismiss the proceeding.

The petitioning creditors in their memorandum support the arguments raised by G–2 Realty in opposition to the motion to dismiss. The petitioning creditors do, however, raise the further argument that since this is an involuntary petition, filed by creditors against G–2 Realty, the presence or absence of good faith on the part of G–2 Realty is not a relevant consideration in the Court's determination whether or not to dismiss the proceeding.

The crux of the Bank's motion to dismiss is the contention that G–2 Realty is attempting wrongfully and in bad faith to procure the jurisdiction of the bankruptcy court in order to obtain the benefits available to a Chapter 11 debtor. In these circumstances the Court must make an inquiry into the debtor's good faith to assure that the purposes of the Bankruptcy Code are not being abused, and that the debtor is the type of entity within the contemplation of the Code.

■ Under § 1112(b) of the Bankruptcy Code (11 U.S.C. § 1112(b)), the Court may dismiss a Chapter 11 proceeding "for cause." The legislative history of the Code makes clear that this section grants the Court wide discretion to use its equitable authority to dismiss a proceeding under Chapter 11 where such a result is appropriate. *See*, House Report, Rep.No.95–595, 95th Cong., 1st Sess. (1977) 405; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 117. · Inherent within this discretionary authority is the power of the Court to dismiss a proceeding where it finds a lack of good faith on behalf of the debtor and a concomitant attempt to abuse the purposes of the Code. *In re Northwest Recreational Activities, Inc.,* 4 B.R. 36, 6 B.C.D. 164

(Bkrtcy., N.D.Ga.1980). The court in that case accurately described the bankruptcy court's duty to inquire into the debtor's good faith under Chapter 11 of the Code:

> Good faith, in the sense perceived by this court to have continued relevance, is merged into the power of the court to protect its jurisdictional integrity from schemes of improper petitioners seeking to circumvent jurisdictional restrictions and for petitioners with demonstrable frivolous purposes absent any economic reality.

> . . . The inclusion of "good faith" test [sic] in the jurisdictional integrity sense within the provision of § 1112 as perceived by this court, combines to insure that the legal status and economic condition of the debtor are within the jurisdictional grant and purpose of Chapter 11. (*Id.,* 4 B.R. at 39, 6 B.C.D. at 166)

■ Thus, despite the absence of any specific statutory language in Chapter 11 requiring an examination of the debtor's good faith at the time of filing,[6] this Court has the inherent power and duty to make such an inquiry. On this point the practice of the bankruptcy courts under Chapter XII, of the former Bankruptcy Act is instructive. Chapter XII similar to Chapter 11 of the Code, contained no requirement that a bankruptcy court inquire into the debtor's good faith at the time the petition was filed. Nevertheless, where it was asserted that a debtor was attempting to fraudulently procure the jurisdiction of the bankruptcy court, courts found that it was appropriate to make such inquiry at the outset of a proceeding. *In re Mallard Associates,* 463 F.Supp. 1259 (S.D.N.Y.1979); *In re Joseph Mass,* 2 B.C.D. 973 (D.Mass.1976).

■ Contrary to the contention of the petitioning creditors, the fact that this proceeding was initiated by an involuntary petition does not preclude the Court from inquiring into the presence or absence of

---

**6.** In fact, the only statutory reference in Chapter 11 to "good faith" is that any plan must be filed in good faith. § 1129(a).

good faith on the part of the debtor. *Mongiello Bros. Coal Corp. v. Houghtaling Properties, Inc.*, 309 F.2d 925 (5th Cir. 1962). Regardless of the nature of the petition filed, the Court, in order to protect its jurisdictional integrity, must satisfy itself that any debtor appearing before it is properly within the contemplation of the Bankruptcy Code. Furthermore, a decision that the filing of an involuntary petition insulates the debtor from an examination into its good faith or lack thereof, would almost certainly encourage collusion between debtors seeking to fraudulently procure the jurisdiction of the bankruptcy court (or in some other manner abuse the purposes of the Code) and friendly creditors. Therefore, herein, in order for G–2 Realty to be eligible as a debtor under Chapter 11, this Court must find that G–2 Realty has satisfied the good faith requirement.

Moreover, an examination of the circumstances of this case demonstrates that a dismissal of the involuntary petition on a finding that G–2 Realty is not an entity properly within the contemplation of Chapter 11, would not be inequitable to the petitioning creditors. In the first place the testimony of two of the petitioning creditors at the hearing (the third petitioning creditor did not testify at the hearing) makes clear that they had no intention of forcing G–2 Realty into an involuntary Chapter 11 proceeding. Instead, the creditors stated that they signed the involuntary petition believing only that in so doing they were in some manner preventing the foreclosure sale and facilitating the collection of their debts from G–2 Realty. Secondly, and more significant, is the fact that throughout their business involvement with G–2 Realty (including the time when the debts were incurred) the petitioning creditors were dealing with a nominee trust. As described below, a nominee trust is not eli-

gible to be a debtor under Chapter 11 of the Code. Thus, prior to G–2 Realty's change to a business trust, the petitioning creditors had no right to force G–2 Realty into an involuntary proceeding and by so doing prevent the foreclosure sale. In this proceeding the Court is only determining whether such change in form by G–2 Realty was effective to make it eligible to be a debtor under the Code. A determination that despite the alteration in form, G–2 Realty remained ineligible would therefore simply have the effect of continuing the petitioning creditors in the position of being unable to prevent the foreclosure sale.

The parties do not dispute the fact that from the date of G–2 Realty's inception in 1973 until it effected the change to a business trust in 1980, G–2 Realty operated as a nominee trust. Nor is it contested that as a nominee trust, G–2 Realty was ineligible to become a debtor under Chapter 11 of the Code.[7] Thus, prior to altering its legal structure to a business trust, G–2 Realty could not have obtained relief under Chapter 11. *In re Norman Cohen*, 4 B.R. 201, 6 B.C.D. 358 (Bkrtcy., S.D.Fla.1980); *In re Treasure Island Trust*, 2 B.R. 332, 5 B.C.D. 1246 (Bkrtcy., M.D.Fla.1980).

▮▮▮ This Court agrees with the assertion by G–2 Realty that an alteration in legal form solely to become eligible as a debtor under the Code is not, standing alone, sufficient to require a finding of bad faith. *In re Northland Construction Co.*, 560 F.2d 756, 759 (7th Cir.), *as amended on denial of rehearing and rehearing en banc* (1977); *In re Diversified Leasing Services, Ltd.*, 4 B.C.D. 309 (E.D.Tenn.1978); *In re Joseph Mass*, 2 B.C.D. 973 (D.Mass.1976). Nevertheless, when such a transformation occurs at or near the time a petition is filed, it is a significant factor which the Court

---

7. G–2 Realty's only contention on this point is that even though as a nominee trust it was ineligible for relief, nevertheless under the circumstances of this case, the trustee of G–2 Realty could have proceeded as a debtor under Chapter 11. Thus, it asserts that at least indirectly G–2 Realty could have obtained the benefits of the bankruptcy laws even before it

converted to a business trust. Without determining whether or not the trustee of G–2 Realty would have been eligible to proceed under Chapter 11, it is sufficient to note herein that the involuntary has been filed against the trust, not the trustee, and it is therefore the trust whose eligibility as a debtor is at issue.

**554**

cannot ignore.[8] In such circumstances the Court must satisfy itself that the debtor demonstrates "exemplary motives and scrupulous good faith" before allowing the debtor to obtain the benefits available under Chapter 11. *In re Joseph Mass, supra,* at 975. Since I find that the actions surrounding G–2 Realty's transformation to a business trust do not demonstrate such motivation or good faith, the petition must be dismissed.

■ The record amply demonstrates that G–2 Realty effected the change from a nominee trust to a business trust solely to become eligible as a debtor under Chapter 11, and to thereby delay or prevent the imminent foreclosure sale of substantially all of its property. It is not disputed that G–2 Realty effected the change subsequent to the date that the Bank had commenced foreclosure proceedings and had scheduled a foreclosure sale. The record shows that Kline, as trustee of G–2 Realty, was aware at the time he executed documents amending the nominee trust to a business trust that some action was required in order to prevent the imminent foreclosure of G–2 Realty's property by the Bank. The record further reveals that G–2 Realty's change to a business trust was, in reality, simply an alteration in form and not in substance. Kline testified that despite the change in form, no change was contemplated in the operation of G–2 Realty or in its management. Thus, rather than for any legitimate business purpose or any attempt to facilitate a reorganization, the transformation to a business trust was merely a scheme by which G–2 Realty would be rendered eligible to invoke or have invoked in its behalf the jurisdiction of the bankruptcy court. Only in this way would G–2 Realty obtain the benefits available to a debtor under Chapter 11, including, most importantly, a stay to block the foreclosure sale of its property.

G–2 Realty argues that in view of Kline's testimony that the change to a business trust was contemplated prior to its financial difficulties with the Bank, any possible improper motive on the part of G–2 Realty is negated. This argument is unconvincing. This Court cannot ignore the fact that whatever the cause of G–2 Realty's failure to effect a change in status prior to its financial difficulties, the actual change to a business trust, an entity eligible to be a debtor under Chapter 11, took place within one month of the scheduled foreclosure sale. Moreover, the timing of the change must be viewed in conjunction with this Court's determination that such change was without any legitimate business purpose and without any intent to reorganize. In such circumstances this Court finds that the motivation behind the change was, as noted above, solely to prevent the foreclosure of its property.

Herein, in view of the absence of any legitimate business purpose or interest in reorganization by the debtor or the petitioning creditors, the only effect of this filing has been to deprive the Bank of its right to foreclose which otherwise would have been available to it. This Court is satisfied that the mere attempt to avoid a foreclosure sale in these circumstances is not the intent behind Chapter 11 of the Code nor does it demonstrate the required good faith on behalf of G–2 Realty. *See, In re Northland Construction Co., supra,* at 760. Therefore, I find that G–2 Realty is not the type of entity properly within the contemplation of Chapter 11, and that to extend the benefits of that chapter to a debtor in such circumstances would be an abuse of the purposes of the Code. Thus, the motion to dismiss should be granted and the involuntary petition dismissed.

---

**8.** In fact, some courts have held that where an entity is formed solely as a medium by which a debtor may become eligible for relief, the petition, on that basis alone, is not filed in good faith and must be dismissed. *See, e. g., In re Metropolitan Realty Corp.,* 433 F.2d 676 (5th Cir. 1970).