**In re GONIC REALTY TRUST, Debtor.**

**Bankruptcy No. 85–00134.**

United States Bankruptcy Court, D. New Hampshire.

July 10, 1985.

Duncan B. MacNamee, Rochester, N.H., for debtor.

Philip T. McLaughlin, Laconia, N.H., for Laconia Peoples Nat'l Bank.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This case is before the court on a motion to dismiss the debtor's Chapter 11 petition on the contention that the petitioning trust is not a qualified "debtor" eligible to file a Chapter 11 proceeding under the Bankruptcy Code. The motion for dismissal is being pressed by the Laconia Peoples National Bank and Trust Company (hereinafter "Laconia Bank"), which was on the verge of foreclosing upon the debtor's real property at the time the voluntary Chapter 11 petition was filed on April 10, 1985. The debtor contends to the contrary that it is qualified to file as a "business trust" under the specialized definition of "corporation" included in the bankruptcy statute. *Bankruptcy Code*, §§ 101(8); 101(14); 101(33); and 109(d).

## FACTS

I will set forth at the outset those specific facts in the record in the present case which appear to me to be crucial to the decision of the debtor's status:

(a) Gonic was organized under a declaration of trust executed and recorded in the local registry of deeds on September 27, 1977. The declaration was amended by a "first amendment" executed on December 15, 1983 and recorded on January 13, 1984.

(b) At the time of the chapter 11 filing the trustee of Gonic was Raymond Crowley, and the beneficiaries of the trust were Raymond A. Crowley and his wife Gracia H. Crowley.

(c) The trust documents generally empower the trustee to take all actions necessary to hold, preserve, and manage all real and personal property which may be transferred into the trust. The declaration includes provisions authorizing the trustee to "conduct the business of the trust and execute written instruments"; permitting the granting of leases and mortgages on any part of the trust property as the trustee may see fit; authorizing the making of loans, either secured or unsecured, on such terms as the trustee deems desirable; authorizing the trustee to "make any composition or arrangement with tenants or debtors or creditors" and generally to compromise or settle any claims involving the trust property; and authorizing the trustee to "pay all expenses incurred or arising in connection with this trust or the trust property".

(d) The trust documents also include provisions giving the beneficiaries the power to direct payment of principal and income annually; providing that trust may be terminated at any time by the beneficiaries by notice in writing; and providing generally that the beneficiaries shall not be personally liable for trust transactions and obligations. The beneficial interests in the trust are freely transferrable but are evidenced only by the declaration of trust and not in separate certificates.

(e) Gonic acquired and holds various items of real and personal property. The major asset is a "multi-floored, older mill complex" located in Rochester, New Hampshire. This complex includes a number of

connected buildings with a total floor area of 163,060 square feet in the main complex and some 3,050 square feet in a detached office building. The main mill parcel has a total area in excess of 29 acres, with an additional parcel of approximately 10 acres across the Cocheco River. By virtue of its river front ownership Gonic also holds certain hydroelectric rights which, although presently undeveloped, have a commercial value.

(f) Gonic acquired and owns machinery, equipment and supplies in excess of $100,000 in value located in the mill complex.

(g) The evidence establishes that during the past several years Gonic has in fact leased out portions of the mill complex to various commercial and industrial tenants, including the General Electric Company, and has in fact had the overall responsibility for maintaining the premises, providing heat under a heating system that covers the entire complex, and generally providing repairs and services requested or required by the various tenants. The debtor's schedules in this proceeding indicate unpaid trade payables in excess of $44,000 from suppliers of fuel oil, electrical service, boiler repairs, security services, snow-plowing, elevator repairs, trucking services, water, telephone, and others relating to the operation of the mill complex.

(h) Gonic also owes $24,000 in unpaid taxes and $41,000 on an unsecured loan from Richard M. Crowley.

(i) Gonic's handling of the affairs of the mill complex was somewhat unorthodox. Crowley as trustee had no specific office designated as that of the "Gonic Trust" but simply handled the affairs of the mill complex from his home or from other business premises in which he was involved. Crowley also often simply used vacant portions of the mill premises for this purpose as it suited him.

(j) Gonic also had no employees on any direct payroll but operated instead entirely by use of independent contractors. On the record before the court it appears that these servicemen and suppliers were content to deal with Gonic Trust on a business basis notwithstanding the lack of any permanent "stationary" office for the trust in the usual sense.

(k) In December of 1983, in connection with obtaining Precision Magnetics and Ceramics Inc. (hereinafter "Precision") as a new tenant in the complex, Gonic entered into a transaction by which Precision was able to borrow substantial sums from the Laconia Bank with Gonic putting up its own real property as collateral for these loans. Gonic itself was not an obligor on the loans. It was this mortgage relating to the Precision debt, in default, which was being foreclosed by the bank at the time of the chapter 11 filing. As of May 14, 1985 the total amount owing the Laconia Bank under that debt was $882,469.80. In granting these loans to Precision, the Laconia Bank was familiar with the terms of the Gonic declaration of trust, including the provisions therein for the activities of the trustee and the provisions purporting to limit the personal liability of the beneficiaries.

(*l*) The foregoing factual picture, supplemented by other details in the evidentiary record, clearly establish that *somebody* was conducting a business at the Rochester mill complex. Since the evidence indicates that Crowley acting as Trustee for Gonic arranged for the mill complex services and supplies; that Gonic paid for all expenses relating to the complex; and that Gonic filed annual income tax returns reflecting profits and losses from its ownership of the mill complex, the court must conclude that the debtor herein was in fact conducting a business notwithstanding its somewhat unusual mode of operation.

## LAW

Both sides have cited numerous cases which they state clearly rule that trusts can or cannot be debtors under the bankruptcy laws. However, examination of the case law indicates that the decisions all go off on their own particular facts and do not stand for any general proposition that *only if* a certain specified list of factors exist

may a real estate trust be deemed to be a "business trust" under the applicable statutory provisions. See, e.g. *In re Mosby*, 46 B.R. 175 (E.D.Mo.1985); *In re Independent Clearing House Company*, 41 B.R. 985 (Utah 1984); *In re Tru Block Concrete Products Inc.*, 27 B.R. 486 (S.D.Cal.1983); *In re Dolton Lodge Trust No. 35188*, 22 B.R. 918 (N.D.Ill.1982); *In re North Shore Bank of Chicago*, 17 B.R. 867 (N.D.Ill. 1982); *In re Dreske Greenway Trust*, 14 B.R. 618 (E.D.Wisc.1981); *In re Old Second National Bank of Aurora*, 7 B.R. 37 (N.D.Ill.1980); *Matter of Cohen*, 4 B.R. 201 (S.D.Fla.1980); *In re Treasure Island Land Trust*, 2 B.R. 332 (M.D.Fla.1980).

■ The decisions do uniformly rule that a trust must be found to be "conducting a business" of some kind in order to come within the statute. While the language in some of the opinions may be read as setting forth a definitive list of essential factors to constitute a business trust, I take the actual basis of decision in such cases to be the use of those factors to support the evidentiary conclusion that the trust in question was actually operating a business in the commonly accepted meaning of such activity.

The more conceptualized approach in defining a business trust, i.e. "pigeon-holing" the trust into one or another category by the form of its organization, was appropriate prior to the 1978 Bankruptcy Code when the applicable statutory language under the previous statute referred to trusts "wherein beneficial interest or ownership is evidenced by certificate or other written instrument." *Bankruptcy Act*, § 1(8). This was construed to mean transferable certificates (apart from the declaration of trust itself) held by a number of beneficiaries under the "Massachusetts trust" device. This device was a corporation in everything but form used to circumvent various local laws relating to corporations. See, e.g., *Associated Cemetery Management Inc. v. Barnes*, 268 F.2d 97 (8th Cir.1959); *Cantor v. Wilbraham*, 609 F.2d 32 (1st Cir.1979); *Pope & Cottle v. Fairbanks*, 124 F.2d 132, 135 (1st Cir.1941); *In re Independent Clearing House Co.*, 41 B.R. 985, 991 (Utah 1984).

The 1978 Bankruptcy Code, in its § 101(8) definition of "corporation", removed the reference to the structure of beneficial ownership and simply refers to a "business trust" as being included within the statutory definition. This has been taken to indicate that real estate trusts that do not confirm to the strict "Massachusetts trust" organizational form might now qualify as bankruptcy debtors. 2 *Collier on Bankruptcy*, 15 Ed., § 101.08, p. 101–21 (1985); *In re Treasure Island Land Trust*, 2 B.R. 332, 334 (M.D.Fla.1980) ("some kind of business or commercial activity for profit"). Some courts still refer to the lack of transferable certificates as a decisive factor in defining a business trust for bankruptcy purposes—without any mention or evaluation of the effect of the foregoing statutory change. See *In re Mosby*, 46 B.R. 175, 177 (E.D.Mo.1985).

■ My view is that Congress did intend and did accomplish a substantive change by the 1978 legislation and that the lack of transferable shares by numerous beneficiaries is no longer a relevant factor for decision. Cf. *In re Tru Block Concrete Products, Inc.*, 27 B.R. 486, 488, (S.D.Cal. 1983):

"The inclusion of the term trust in the definition of entity in Section 101(14) and its inclusion only when qualified as a business trust in the definition of corporation in Section 101(8) leads to the conclusion that it was the intention of Congress to eliminate from the protection of the Code mere devices which simply hold title to property, but include in its coverage, enterprises performing some functions of a business."

The court in *Tru Block* held that a liquidating trust could come within the new statutory definition. See also dicta in *In re Dreske Greenway Trust*, 14 B.R. 618 (E.D. Wisc.1981). The expanded protection given under the new definition is consistent with the remedial nature of the bankruptcy laws. *Tru Block*, supra, at p. 491.

CONCLUSION

■ In the present case it is clear that Gonic was conducting a business operation relating to the leasing of various portions of the mill complex to commercial and industrial tenants. This was something more than mere holding and conserving particular property in a "simple land trust" which admittedly is not within even the liberalized language of § 101(8) of the Bankruptcy Code. See *In re Treasure Island Land Trust*, supra, at p. 334. Arguably, abuse could occur by characterizing incidental "protecting" activities of a simple land trust as a "business operation" in order to bring such a trust within bankruptcy jurisdiction. While the line may be hard to draw in other cases, it is sufficient to state that no such sham characterization is involved here. In my view this case is well on the side of the true business operation.

It may be useful to note that the court is aware that an equitable issue of lack of good faith in filing the Chapter 11 petition might be bottomed on a contention that it is simply unfair to allow individuals to bring in a "partial entity" to resolve liability problems without also subjecting "all the assets relevant to the issue" to the reorganization process and the supervision of the bankruptcy court.

This "extra factor" is not always articulated in the decisions and really does not relate strictly to a definition of business trust but rather to a question of abuse of the court's jurisdiction. The issue was directly raised in *In re Dolton Lodge Trust No. 35188*, 22 B.R. 918, 923–24 (N.D.Ill. 1982), and supported the decision there to dismiss the Chapter 11 petition.

In the present case the court itself raised the question of possible abuse of jurisdiction and gave the bank an opportunity to introduce additional evidence in that regard, i.e., whether either of the Crowleys had sufficient assets to fund an appropriate reorganization to provide for the payment of the trade creditors involved in the mill complex and to refinance the bank debt. The bank did not avail itself of the opportunity to introduce such evidence at the recessed hearing. The court accordingly concludes that a Chapter 11 reorganization of this debtor is essential if the creditors stemming from the debtor's business operation are to have any possibility of repayment.

A separate order shall be entered denying the motion to dismiss.