## In re VILLAGE GREEN REALTY TRUST, Debtor.

### Bankruptcy No. 90–10095–JNG.

United States Bankruptcy Court, D. Massachusetts.

April 30, 1990.

Neal Satran, Satran, Reade & Marino, Boston, Mass., for debtor.

Jon D. Schneider, Goodwin, Procter & Hoar, Boston, Mass., for movant.

## MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

## I. INTRODUCTION

Village Green Realty Trust ("Village Green," the "Trust" or the "Debtor") filed a petition under Chapter 11 on January 8, 1990. The petition states that "[p]etitioner is qualified to file this petition and is entitled to the benefits of Title 11, United States Code." On January 24, 1990, Lowell Institution for Savings ("LIFS" or the "Bank") filed a motion for dismissal, appointment of a trustee, and relief from stay. LIFS maintains that, contrary to the statement made in the petition, as a nominee trust Village Green is ineligible for bankruptcy relief. In the alternative, LIFS seeks a declaration that the beneficiary of the trust be declared the *de facto* debtor. As is evident from the caption of LIFS' motion, LIFS also seeks the appointment of a Chapter 11 trustee and relief from the automatic stay imposed by section 362 of the Bankruptcy Code so that it may proceed with the foreclosure sale it previously had scheduled for January 9, 1990.

## II. FACTS

The Court conducted an evidentiary hearing on March 5, 1990, at which time counsel to LIFS made an offer of proof, four witnesses testified, and 14 exhibits, including the declaration of trust creating Village Green, which instrument was duly recorded, were admitted into evidence. The Court agreed to accept the Bank's offer of proof, subject to the Debtor's right to submit evidence to counter any of the proffered facts.

In his offer of proof, counsel to LIFS stated that the Debtor is a nominee trust whose sole asset is a strip shopping center located in Sudbury, Massachusetts, containing approximately nine rental units. Counsel indicated that the trust has few unsecured creditors, and no employees. Moreover, according to counsel's offer of proof, the bankruptcy filing occurred on the eve of the Bank's foreclosure sale. Finally, counsel indicated that liens and encumbrances on the trust property total $3,596,-822, including $368,000 in unpaid real estate taxes, $2,223,000 in principal and interest owed to LIFS on its first and second mortgages, and $756,000 owed to the Bank from cross collateralized notes. According to the Bank, the appraised fair market value of the property is $3,550,000 and the liquidation value is $3 million, less 10% selling costs, leaving no equity in the property for the Debtor.

The Bank's first and only witness, Walter Marsella, testified about the history of the loan and corroborated the amounts due the Bank as outlined by counsel in his offer of proof. Mr. Marsella testified that LIFS made demand of the Debtor in January of 1989 and scheduled the first of many foreclosures sales in March of that year. Mr. Marsella also alluded to a state court action commenced by the Debtor which successfully forestalled the Bank's attempts to foreclose on the property for several months.

The Debtor's three witnesses, an appraiser and the trustee and the beneficiary of Village Green, primarily addressed the issue of whether the Bank's interest in the property could be adequately protected pursuant to a series of transactions contemplated by Robert Quirk, the sole beneficiary of the trust. These transactions included the refinancing of the subject property, as well as the granting of mortgages on property outside the jurisdiction of the Bankruptcy Court.

With respect to the Bank's offer of proof, the Debtor did not challenge the Bank's characterization of the trust as a nominee trust. However, the Debtor attempted to show that the trust was engaged in business and was more than a mere holder of real estate for investment and preservation. The testimony of Mr. Quirk and Mr. Thomas Sheridan, the trustee, revealed that Village Green filed tax returns and had a federal identification number. The testimony also revealed that, although Mr. Sheridan was responsible for the day to day management and operation of the property from an office in his home, Mr. Quirk was instrumental in acquiring tenants for the property and that it was through his efforts that a major tenant was acquired to replace a restaurant whose bankruptcy resulted in vacant space and cash flow problems for the shopping center. Mr. Sheridan indicated that he was not an employee of the trust. He stated that he was compensated for his activities as an independent contractor instead. It was abundantly clear from the testimony that Mr. Quirk, not Mr. Sheridan, was that party responsible for negotiating with LIFS and making the critical decisions affecting the trust property.

Mr. Quirk testified that he infused substantial sums of his own money into property owned by the trust. Despite this testimony, however, there is a lis pendens on the property that relates to a state court law suit through which Mr. Quirk's sister is challenging this assertion.

The declaration of trust, which is dated February 21, 1978, provides that the trustee is "authorized to purchase and hold title to lands and tenements, to build and develop real estate and to buy, lease, sell, mortgage, control and operate such real estate, all for the benefit of the designated Beneficiary or Beneficiaries." The trust instru-

ment further provides that all the net income of the trust in any given year is to be distributed to the beneficiary or the beneficiaries in accordance with their interests, and that the trustee, who is to hold legal title to all property, is vested with all the powers necessary for the execution of the purposes of the trust, including the power to buy, sell, develop, build, control, operate, lease and rent lands and buildings; the power to make all necessary contracts, the power to prosecute, defend and settle law suits; and the power to borrow money on a secured or unsecured basis. The trust also provides that neither the trustee nor the beneficiary or beneficiaries shall be personally liable for failure of the trustee to perform under contracts and that any person or corporation contracting with the trustee shall look to the funds and property of the trust for payments that may become due or payable by reason of the trustee's failure to perform.

The trust instrument does not identify the beneficiary or beneficiaries, although it indicates that the "each beneficiary has been given simultaneously herewith a Certificate of Beneficial Interest in the amount or proportion designated in the said certificate." The trust neither provides that the certificates are transferable nor does it prohibit or condition the transfer of certificates in any way. The certificate or certificates owned by Mr. Quirk were not offered into evidence. The trust also does not include provisions relative to the removal of the trustee or how it can be amended. Mr. Sheridan became the trustee in January of 1989. Neither he nor his predecessor were named in the original instrument, which provided for two successor trustees to the original trustee/settlor, Seta Nercessian.

In addition to the foregoing facts, the Court notes from an examination of the Debtor's schedules that the Debtor lists two unsecured creditors whose claims total approximately $13,000, and that the petition and schedules and statement of affairs were signed by the beneficiary, Robert D. Quirk, "as he is duly authorized."

## III. DISCUSSION

### A. *Background*

With the recent downturn in the real estate market in Massachusetts, the number of trusts filing bankruptcy has increased dramatically. Village Green Realty Trust is typical of a number of single asset cases being filed by trusts. In circumstances such as these, the Court is quickly confronted with a secured party's motion to dismiss on the ground that the trust is a nominee trust ineligible for bankruptcy relief, followed by the Debtor's seemingly invariable response that it conducts a business and is thus a business trust eligible for relief under the Code pursuant to 11 U.S.C. section 101(8)(A)(v).

■ In a recent opinion, Judge Queenan sets forth in detail the statutory foundations for the arguments outlined above. *In re Medallion Realty Trust*, 103 B.R. 8 (Bankr.D.Mass.1989). Since these foundations have been set forth in other opinions in this circuit as well, they need not be repeated in detail here. *See In re L & V Realty Trust*, 61 B.R. 423 (Bankr.D.Mass. 1986); *In re Gonic Realty Trust*, 50 B.R. 710 (Bankr.D.N.H.1985), *In re G–2 Realty Trust*, 6 B.R. 549 (Bankr.D.Mass.1980); *In re Ponn Realty Trust*, 4 B.R. 226 (Bankr. D.Mass.1980). Clearly, a business trust is eligible for relief since the Code provides only a person may be a debtor, 11 U.S.C. § 109(a), and a person is defined in 11 U.S.C. § 101(33) to include a corporation, which in turn is defined to include a business trust. 11 U.S.C. § 101(8)(a)(V). However, the problem, as Judge Queenan noted, is the meaning of "business trust." Judge Queenan stated:

The decisions are sharply, and perhaps hopelessly, divided on the meaning of "business trust." Some, following the pattern established under the prior Act, hold that it means a trust which is deemed a corporation for federal income tax purposes under the test enunciated in *Morrissey v. Commissioner*, 296 U.S. 344, 359, 56 S.Ct. 289, 296, 80 L.Ed. 263 (1935), namely a trust having (i) business function, (ii) transferable certificates of beneficial interest, (iii) centralized management, (iv) continuity of life and (v) limited liability. . . . Others look to

the trust's operations to determine whether they include substantial business activities, disregarding the terms of the creating document.

103 B.R. at 10 (citations omitted).

The Court agrees with the observation made by Judge Queenan about the seemingly disparate treatment of trusts. Courts appear to struggle with the issues raised by their filing, and, as noted by Judge Yacos in *In re Gonic Realty Trust,* 50 B.R. 710 (Bankr.D.N.H.1985), they also appear to be sensitive to an "extra factor" —the unfairness of allowing "individuals to bring in a 'partial entity' to resolve liability problems without also subjecting 'all the assets relevant to the issue' to the reorganization process and the supervision of the bankruptcy court." 50 B.R. at 714. *See also, In re Dolton Lodge Trust No. 35188,* 22 B.R. 918, 923–24 (N.D.Ill.1982). In view of the number of trusts filing for bankruptcy protection, an examination of the case law in this circuit relevant to the resolution of the instant case is warranted. Interestingly, the cases the Court intends to discuss range along a continuum between the extremes noted above.

### B. *Case Law*

In May and October of 1980, shortly after the Bankruptcy Reform Act's elimination of the requirement contained in section 1(8) of the Bankruptcy Act of 1898 as amended in 1926 that beneficial interest or ownership of trusts be evidenced by certificate or written instrument, two bankruptcy court opinions from this district were issued: *In re Ponn Realty Trust,* 4 B.R. 226 (Bankr.D.Mass.1980) and *In re G–2 Realty Trust,* 6 B.R. 549 (Bankr.D.Mass.1980). Procedurally,· both opinions arose out of motions by secured creditors to dismiss.

In *Ponn Realty, supra,* the court framed the issue as follows: "Can Chapter 11 properly be invoked to forestall a secured creditor from foreclosing a mortgage on a one-family, debtor-occupied residential dwelling and thereby also seek readjustment of the mortgage debt?" 4 B.R. at 228. The court stated, without elaboration and somewhat inexplicably in view of its ultimate holding, that the Ponn Realty Trust was a business trust with transferrable [sic] shares. While the court did not rule out the possibility that "under the proper circumstances, a business trust such as a realty trust with transferable shares may be a proper debtor under Chapter 11 of the Bankruptcy Code," *Id.* at 229, it concluded that the Ponn Realty Trust was not in business and, therefore, was not entitled to bankruptcy protection since the trustee's son owned all the beneficial shares of the trust, and the trustee herself resided in the trust's only property, a single family dwelling.

The court based its decision to dismiss the case upon the petition, schedules, statement of affairs, admissions in open court, and a compelling analysis of congressional intent with respect to readjustment of mortgages on owner-occupied single family homes under Chapter 11, particularly where there are no creditors other than mortgagees. The court also referred to the abstention provisions of section 305 of the Bankruptcy Code. 11 U.S.C. § 305. The court held that "[t]he reorganization of an owner-occupied, single family dwelling that produces no income and has only mortgage creditors does not have any similar characteristics [sic] and was not intended to be the subject of a Chapter 11 business reorganization." *Id.* at 231. The court succinctly stated that "Chapter 11 of the Bankruptcy Code was intended for utilization solely in the business setting and not in a consumer context." *Id. Accord Wamsganz v. Boatmen's Bank of De Soto,* 804 F.2d 503 (8th Cir.1986), *contra In re Moog,* 774 F.2d 1073, 1074 (11th Cir.1985) ("To the extent that *Ponn Realty Trust* stands for the proposition that a consumer debtor whose only asset is a single family debtor occupied dwelling, may not seek relief under Chapter 11, we refuse to adopt such reasoning.").

In *G–2 Realty Trust, supra,* the court dismissed a bankruptcy case filed by a realty trust on the basis of bad faith. The trust in question was amended three weeks prior to the filing of an involuntary petition to provide that it was a business trust with

fully transferable beneficial interests, rather than a nominee trust with beneficial interests that were neither assignable nor transferable. Since it was uncontested that as a nominee trust G–2 would be ineligible to be a debtor, the court did not elaborate on the reasoning to support this conclusion.

Although the court ruled that there was no evidence of collusion between G–2 and the petitioning creditors, an issue raised by the movant, it found that the actions surrounding G–2 Realty's transformation from a nominee trust ineligible to become a debtor under Chapter 11 to a business trust did not demonstrate "exemplary motives and scrupulous good faith" and was merely an alteration in form and not in substance, since no change in the operation or management of the trust was contemplated. 6 B.R. at 554. The court stressed its "inherent power and duty" to examine the Debtor's good faith, despite the absence of any specific statutory language, so as to protect its jurisdictional integrity. *Id.* at 552–53.

Clearly, the early cases establish the beginnings of a framework for the analysis of filings by trusts. Where the trust appears to be created solely for the benefit of family members and does not involve any "business," as that term is commonly understood, or unsecured creditors, it is ineligible to be a debtor regardless of what it is labeled. Likewise, prepetition activities of a questionable nature cannot immunize a trust from dismissal as an ineligible debtor even if the debtor did not file the petition itself.

In 1985, Judge Yacos decided a case on facts similar to the ones that have emerged in the instant case. *See In re Gonic Realty Trust,* 50 B.R. 710 (Bankr.D. N.H.1985). In the *Gonic* case, the party seeking dismissal had lent money to a tenant of the trust whose major asset was a multi-floored, older mill complex that was leased to commercial and industrial tenants. The trust, in conjunction with a borrowing by its tenant, put up its real property as collateral for the tenant's loan. Following the tenant's default and the impend-

ing foreclosure of the mortgage it granted, Gonic sought bankruptcy relief. The trustee of the Gonic Realty Trust was also a beneficiary of the trust along with his wife.

As outlined by the New Hampshire court, the trust documents contained provisions similar to those present in the instant case. Additionally, the court found that "[t]he beneficial interests in the trust are freely transferrable [sic] but are evidenced only by the declaration of trust and not in separate certificates." 50 B.R. at 711.

Like Village Green, the Gonic trust had no employees, only independent contractors working for it, and the trustee handled the affairs of the trust from his home or other business premises. Moreover, Gonic Realty Trust paid taxes and all expenses relating to the mill complex. Unlike Village Green, though, the Gonic Realty Trust owned property in addition to its major asset—the mill complex, namely machinery and equipment valued at $100,000, and it had more unsecured creditors.

From this set of facts, the court concluded *"somebody* was conducting business at the Rochester mill complex." 50 B.R. at 712. The court, beginning its discussion of the law, observed "examination of the case law indicates that the decisions all go off on their own particular facts and do not stand for any general proposition that *only if* a certain specified list of factors exist may a real estate trust be deemed to be a 'business trust' under the applicable statutory provisions." *Id.* at 712–13 (citations omitted). Thus, Judge Yacos, unlike Judge Queenan, did not view the cases as being sharply and hopelessly divided based upon use or misuse of the test enunciated in *Morrissey v. Commissioner,* 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935). Judge Yacos stated:

While the language in some opinions may be read as setting forth a definitive list of essential facts to constitute a business trust, I take the actual bases of decision in such cases to be the use of those factors to support the evidentiary conclusion that the trust in question was actually operating a business in the commonly accepted meaning of such activity.

50 B.R. at 713. The court in *Gonic*, emphasized its view that Congress intended a substantive change by the 1978 legislation and concluded that "the lack of transferable shares by numerous beneficiaries is no longer a relevant factor for decision." *Id.*

The *Gonic* court, as has been mentioned, raised the issue of good faith and the possible abuse of bankruptcy court jurisdiction. The New Hampshire court, after giving the movant an opportunity to submit evidence relative to whether the trust and its beneficiaries had sufficient assets to fund a plan of reorganization, pay unsecured creditors and refinance the bank's debt, concluded that a Chapter 11 reorganization was essential. *Id.* at 714. This Court suspects that the New Hampshire court's decision may have been influenced by the equities in the case, particularly the fact that the trust was not an obligor of the movant.

A year after the *Gonic* case, Judge Lavien issued a "Memorandum on Nominee Trust" in the case of *In re L & V Realty Trust*, 61 B.R. 423 (Bankr.D.Mass.1986). In that case, the beneficiaries of the trust were the wife and sister-in-law of the trustee, who was given broad powers under the trust instrument. The trust owned one asset, a piece of real estate occupied by Suffolk Downs Cafe, Inc., a corporation wholly owned by the trustee and his wife. The cafe rented its premises from the debtor and paid taxes on the real estate until it was destroyed by fire, an event that precipitated a default on its mortgages and the bankruptcy filing by the trust. The *L & V* court found the following facts: 1) neither of the beneficiaries invested money in the trust; 2) neither of the beneficiaries participated in making business decisions; 3) the

trust kept no books, and the trustee did not account to the beneficiaries; 4) the trust did not file income tax returns; 5) the corporation was responsible for the finances of the trust; 6) there were no transferable certificates; and 7) the declaration of trust was not filed as required by state statute. 61 B.R. at 424.

In reaching its decision, the *L & V* court relied upon the characteristics of a business trust delineated by the Supreme Court in *Hecht v. Malley*, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949 (1924), as well as Massachusetts decisions holding that the "Massachusetts Trust" form of business organization may be either a pure trust or a partnership depending upon the way in which the trustees are to conduct the affairs committed to their charge,[1] and the factors outlined in *Pope and Cottle Co. v. Fairbanks Realty Trust*, 124 F.2d 132 (1st Cir. 1941).[2] The court concluded that L & V was not a business trust. Although the *L & V* court recognized the change made to the applicable statutory language, the court stated:

> This change, when applied to the facts of this case, presents a distinction without a difference. First, the Supreme Court has defined business trust in Massachusetts to require transferable shares, *Hecht v. Malley*, 265 U.S. at 146, 44 S.Ct. at 463. Second, even if it were theoretically possible to have a business trust in Massachusetts that did not comply with Massachusetts General Law 182 section 1, this is not the case. The court in reaching the decision that the trust in question does not satisfactorily meet the requirements of a business trust considered its failure to meet the other

---

**1.** According to the Massachusetts decisions cited by Judge Lavien, *e.g., Williams v. Milton*, 215 Mass. 1, 102 N.E. 355 (1913); *Frost v. Thompson*, 219 Mass. 360, 106 N.E. 1009 (1914); *Dana v. Treasurer*, 227 Mass. 562, 116 N.E. 941 (1917), and *Priestly v. Burrill*, 230 Mass. 452, 120 N.E. 100 (1918), a trust is created when the trustees are free of the control of the certificate holders; and a partnership between the certificate holders is created when the trustees are merely the managing agents of the certificate holders. *See also State Street Trust Co. v. Hall*, 311 Mass. 299, 41 N.E.2d 30 (1942).

**2.** The First Circuit in *Pope and Cottle Co. v. Fairbanks Realty Trust*, 124 F.2d 132 (1st Cir. 1941), determined that the trust in question was ineligible for bankruptcy relief after considering the following factors: 1) contributions of capital by beneficiaries; 2) familial relationships between trustees and beneficiaries; and 3) transferability of shares represented by certificates. The court concluded that the trust in question did not appear to be "anything other than a family trust set up for the benefit of relatives." *Id.* at 133.

factors mentioned in *Pope and Cottle*, 124 F.2d at 133....

61 B.R. at 426 n. 1. Parenthetically, the court did not consider the *Gonic* decision, although given the divergent facts this is not surprising.

The most recent, and perhaps most interesting decision in this circuit, is *In re Medallion Realty Trust*, 103 B.R. 8 (Bankr.D. Mass.1989). In that case, like the instant one, the instrument by which the debtor was formed was unchallenged as indicative of a nominee trust. However, the beneficial interests were not represented by certificates, rather they were listed on a schedule filed with the trustee, and the assignment of beneficial interests was subject to a right of first refusal held by the other beneficiaries. At all times, one or the other of the beneficiaries of the Medallion Realty Trust acted as trustee, and both beneficiaries contributed to the trust, one by the infusion of cash and the other by providing his expertise with respect to the debtor's business of buying and selling lots improved with modular homes installed and finished by the trust's employees. The trust, according to the court, incurred secured debt of almost $4 million and unsecured debts of approximately $300,000 to 100 creditors.

Like other courts addressing the issue of the eligibility of trusts for relief under Chapter 11, the *Medallion* court reviewed the statutory and legislative framework, observing that "[i]n denying general eligibility to trusts, Congress presumably viewed trusts, even those of the intervivos variety, as being much like estates in that they are typically enmeshed in an estate plan and are under the control of the state probate court."[3] *Id.* at 11. The court concluded that

> Congress intended to permit bankruptcy relief for all trusts which are created for the purpose of transacting business and whose beneficiaries make a contribution in money or money's worth to the enterprise, without regard to whether the trust has characteristics of a corporation such as separate certificates of ownership.

*Id.* at 11–12. This standard appears fairly consistent with the *Gonic* decision. The *Medallion* court unequivocally concluded that the Medallion trust met this standard, thereby permitting the inference that the trust was eligible to file as a business trust. Indeed, the court stated: "[t]o the extent that the Debtor may be regarded as a trust, it is an eligible 'business trust.'" *Id.* at 14. However, the court, because of the agency relationship between the trustee and the beneficiaries and the fact that the trust was a mere conduit for the income of the beneficiaries, in its words, "properly classified" the trust as a partnership under the name Medallion Realty Trust.

In reaching its decision, the *Medallion* court disclaimed reliance on Massachusetts cases holding that a Massachusetts business trust can be a partnership depending upon the control over its affairs exercised by the beneficiaries. Additionally, the court did not discuss the issues of good faith or unfairness to creditors. However, this Court suspects that awareness of the unfairness of permitting a "partial entity" to avail itself of the protection afforded by the Code may have been an underpinning of the court's decision to classify the trust as a partnership, a decision made without the procedural vehicle of an adversary com-

---

**3.** In this regard, this Court is in complete agreement with the result in *In re Vivian A. Skaife Irrevocable Trust Agreement # 1*, 90 B.R. 325 (Bankr.E.D.Tenn.1988), wherein the court dismissed a family trust that was by its terms established to preserve and protect assets, namely shares of common stock, patents and trademarks, for the comfort and support of the settlor's children and their spouses. The court emphasized the fact that business activities were but one of the options to be considered by the trustee in promoting the purposes of the trust.

Likewise, this Court agrees with the result in *In re Saint Augustine Trust*, 109 B.R. 494 (Bankr.M.D.Fla.1990), wherein the court, based on the trust instrument and the totality of the facts and circumstances, dismissed a family trust which was admittedly created as an estate planning device, rather than for a distinct business purpose, although the trust was engaged in real estate development.

plaint for declaratory judgment. Moreover, the court did not address the issue identified by Judge Lavien in *L & V Realty*, namely whether there can be a business trust in Massachusetts that does not comply with M.G.L. ch. 182.[4] *See L & V Realty Trust*, 61 B.R. at 426 n. 1.

From *Medallion*, it is clear that, whether or not one looks to Massachusetts decisions holding that a Massachusetts business trust may be a partnership depending upon the degree of control the beneficiaries themselves exert over the affairs of the trust, a nominee trust instrument creates an agency relationship between the trustee and the beneficiaries. However, the type of relationship that exists between the beneficiaries poses another question altogether. In other words, the principal in the principal/agent relationship created by a nominee trust, as the *Medallion* court properly noted, may be a partnership, a business trust, a co-tenancy, a co-venture, a corporation, or an individual. Thus, if this Court were to follow the *Medallion* decision, Robert Quirk, the beneficiary/principal, would be the appropriate "person" before the Court, doing business as Village Green Realty Trust.

The Court's review of the cases just discussed compels the conclusion that there are three possible avenues to follow with respect to alleged nominee trusts: 1) dismiss them, if they are unable to meet the criteria set forth in M.G.L. ch. 182 (i.e., transferable shares and proper recordation with the secretary of state and with the clerk of every city or town where the trust has a usual place of business) or if they were created merely to preserve assets for family members or as estate planning devices; *see In re L & V Realty Trust*, 61 B.R. 423 (Bankr.D.Mass.1986); *In re G–2 Realty Trust*, 6 B.R. 549 (Bankr.D.Mass.

1980); *In re Ponn Realty Trust*, 4 B.R. 226 (Bankr.D.Mass.1980); 2) retain jurisdiction, following a determination that such trusts appear to be conducting business, *see In re Gonic Realty Trust*, 50 B.R. 710 (Bankr.D.N.H.1985); 3) retain jurisdiction and reclassify the beneficiary/principal as the proper debtor doing business in the name of the trust, *see In re Medallion Realty Trust*, 103 B.R. 8 (Bankr.D.Mass. 1988).

■ This Court concludes that dismissal is the correct approach to a bankruptcy court filing by a so-called nominee trust if the trust is unable to meet the state statutory criteria, regardless of whether or not the debtor can also show that it is conducting business. Since the Bankruptcy Code does not define what constitutes a business trust, and since the decisions are, if not hopelessly divided, at least certainly divergent, this Court must look, to state law for guidance. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The Massachusetts legislature has adopted minimal requirements for entities to be considered business trusts. Just as in the case of corporations and partnerships, business trusts must meet these minimum state statutory formulations to be considered eligible for bankruptcy relief in Massachusetts. Additionally, the trust whose eligibility is challenged must show it is doing business as that term is commonly understood.

In that regard, it is helpful to keep in mind that a business trust, on the one hand,

> is created by the voluntary act of the parties and is based on contract. It is intended for the purpose of carrying on some kind of business or commercial activity for profit. Indeed, the profit-mak-

---

**4.** In Massachusetts, M.G.L. ch. 182 recognizes the existence of business trusts as voluntary associations and imposes obligations and liabilities upon them. Specifically, section 1 of chapter 182 defines a trust for purposes of chapter 182 as "a trust operating under a written instrument or declaration of trust, the beneficial interest under which is divided into transferable certificates of participation or shares, other than a trust established for the sole purpose of exer-

cising the voting rights pertaining to corporate stock or other securities in accordance with the terms of a written instrument." M.G.L. ch. 182, § 1 (West 1987). Additionally, section 2 requires recordation with the secretary of state and with the clerk in every city or town where the trust does business, and section 6 permits suits against associations or trusts and permits them to use a seal. *Id.* at § 2 and § 6.

ing function is one of the most significant characteristics of the business trust. Title to the capital of the organization is vested in trustees, who usually manage the affairs of the trust. The beneficial interests in the trust estate and in the profits are evidenced by transferable certificates, similar to corporate shares, and the existence or life of the organization is not affected by the death or disability of a member or shareholder or by the sale or transfer of his interest.

13 Am.Jur.2d "Business Trusts" § 3 (1964) (footnotes omitted.). *See also Hecht v. Malley,* 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949 (1924); *Swartz v. Sher,* 344 Mass. 636, 639, 184 N.E.2d 51 (1962); *State Street Trust Co. v. Hall,* 311 Mass. 299, 41 N.E.2d 30 (1942); Annotation, "Massachusetts or Business Trust," 88 A.L.R.3d 704 (1978).

A nominee trust, on the other hand, may be created for various purposes, including anonymity of ownership (since a schedule of beneficial interest holders need not be recorded with the trust instrument); ease of title transfer; and avoidance of title transfers (since the assignment of beneficial interests may eliminate the need to purchase documentary stamps and/or avoid mortgage provisions permitting acceleration or default upon transfer of title). *See* Birnbaum and Monahan, "The Nominee Trust in Massachusetts Real Estate Practice," 60 Mass.L.Q. 364 (1976). The key to the nominee nature of a trust, as has been stressed, is the provision giving the beneficiaries the power to direct the trustee's activities with respect to the trust property. This provision "defeats the stated intention of creating a trustee-beneficiary relationship and creates instead, under Massachusetts law, the relationship of principal-agent (at least in so far as third parties are concerned)." *Id.* at 365.

Since the beneficiaries of a nominee trust have the exclusive power to direct the activities of the trustee, it makes sense to view the beneficiaries as the owners of the trust res and to look to their relationship to each other for bankruptcy purposes. *See In re Medallion Realty Trust,* 103 B.R. at 12. In other words, it is not the nominee trust itself that engages in business; it is

the principals who engage in business activities, using the device of a nominee trust and the assistance of their trustee/agent. The relationship of the beneficiaries may be a partnership, corporation, co-tenancy or other entity. Viewed in this way, the nominee trust itself is not doing business and is thus not a business trust eligible to be a debtor because at any moment the beneficiaries may direct the trustee to alter or terminate the very business activities they are directing the trustee to perform on their behalf.

Despite the apparent simplicity of distinguishing between business and nominee trusts as thus described, the label "nominee trust" appears to be applied with a broad brush, and there may be instances where an alleged nominee trust/debtor may be able to establish the criteria set forth in M.G.L. ch. 182, as well as its business function, and thus be eligible for bankruptcy relief. However, a so-called nominee trust that fails to meet the requirements of Massachusetts law to be a Massachusetts business trust cannot be a "business trust" for bankruptcy purposes, even though the draftees of the Bankruptcy Code eliminated the requirement of transferable shares, thereby resolving the issue raised in *In re L & V Realty Trust,* 61 B.R. 423, 426 n. 1 (Bankr.D.Mass.1986). However, with respect to a so-called nominee trust, "in examining the debtor as an entity the focus should not be on what the debtor is *called* but rather on what the debtor actually is and the purpose it has been created to carry out." *In re Dolton Lodge Trust No. 35188,* 22 B.R. 918, 925 (Bankr.N.D.Ill.1982).

Since the Code defines a corporation to include a business trust, it stands to reason that a business trust should have at least some of the indicia of a corporation and be more than a mere agency. Although bankruptcy courts routinely look to substance over form, this Court, unlike the *Medallion* court, cannot ignore the nominee trust's inability to qualify as a Massachusetts business trust under state law. It is not this Court's intention to look behind the trust to find an eligible debtor in the form

of the beneficiary. On the contrary, this Court intends to put the onus for an appropriate filing on the trustee or the trust beneficiaries rather than designating the individual or other entity holding the beneficial interests in a nominee trust as the proper debtor. In short, the Court will not squeeze itself into the keyhole to open the door to bankruptcy protection when the beneficiaries of a nominee trust hold the key. The beneficiaries can open the door by filing individual or partnership bankruptcies or live with the consequences of their choice of the nominee trust vehicle. This approach, in addition to the benefit of simplicity, eliminates substantive and procedural concerns stemming from the disregard of the trust vehicle by the court, particularly where the intent to operate as a partnership or sole proprietorship is problematic. It also may obviate consideration of the related issue of good faith that all too frequently arises in these cases, and it certainly avoids the ironic result of appearing to reclassify as another entity a trust that resembles a corporation and is held out to the public as an operative trust, if properly recorded, see M.G.L. ch. 182, § 2 (West 1958); M.G.L. ch. 203, § 2 (West 1958). ("If a trust concerning land is created or declared by such instrument, the recording of the instrument in the registry of deeds for the county or district where the land lies shall be equivalent to actual notice to every person claiming under a conveyance, attachment or execution thereafter made or levied.") *See also Swartz v. Sher,* 344 Mass. 636, 640–41, 184 N.E.2d 51 (1962).

## C. *Debtor's Eligibility*

■ With respect to the instant case, nothing in the Declaration of Trust dated February 21, 1978 compels the trustee of Village Green to operate a business. Indeed paragraph III of the trust instrument merely authorizes the trustee "to purchase and hold title to lands and tenements, to build and develop real estate and to buy, lease, sell, mortgage, control and operate such real estate, all for the benefit of the designated beneficiary or beneficiaries." This is a far cry from a mandate to carry on a profit making enterprise. Nevertheless, assuming that the factors enunciated in *Morrissey v. Commissioner,* 296 U.S. 344, 360, 56 S.Ct. 289, 296, 80 L.Ed. 263 (1935), are applicable, it cannot be denied that Village Green, at least superficially, has some of the characteristics of a business trust or corporation, including some business functions and limited liability. Additionally, Robert Quirk appears to have made a contribution of money to the trust.

■ Despite these facts which might support the conclusion that Village Green is eligible, the Court is bereft of evidence with respect to whether or not the certificates of beneficial interest are transferable. Since the certificates, if they exist at all, may contain language conditioning or precluding their transfer, the Court cannot construe the silence of the trust instrument to signify that the certificates are in fact transferable. In the absence of this evidence and a complete record of where the trust instrument was filed, the Court cannot make a determination that Village Green is a business trust for purposes of M.C.L. ch. 182. Accordingly, the Court must turn to the Bank's second ground for dismissal—bad faith.

Village Green like so many real estate trusts, filed on the eve of a foreclosure sale, the trustee of the trust holds title to a single asset, the shopping center, and the filing essentially entails only a single dispute between the principal of the trust, Robert Quirk, and LIFS. In short, the filing was merely an attempt by the Debtor to effectuate a workout with the Bank, since the unsecured debt is minimal. In *In re Bryan,* 104 B.R. 554 (Bankr.D.Mass. 1989) this Court identified 14 factors considered by courts in finding bad faith, namely:

1. The debtor has few or no unsecured creditors;

2. There has been a previous bankruptcy petition by the debtor or a related entity;

3. The pre-petition conduct of the debtor has been improper;

4. The petition effectively allows the debtor to evade court orders;

5. There are few debts to non-moving creditors;

6. The petition was filed on the eve of foreclosure;

7. The foreclosed property is the sole or major asset of the debtor;

8. The debtor has no ongoing business or employees;

9. There is no possibility of reorganization;

10. The debtor's income is not sufficient to operate;

11. There was no pressure from non-moving creditors;

12. Reorganization essentially involves the resolution of a two party dispute;

13. A corporate debtor was formed and received title to its major assets immediately before the petition;

14. The debtor filed solely to create the automatic stay.

*Id.* at 558, *citing In re Wentworth*, 83 B.R. 705, 707 (Bankr.D.N.D.1988); *see also In re Little Creek Development Co.*, 779 F.2d 1068, 1072–73 (5th Cir.1986); *In re G–2 Realty Trust*, 6 B.R. 549, 554 (Bankr.D. Mass.1980). A number of those factors are present here. The fact that the Debtor could not offer the Bank adequate protection without resorting to property outside the Court's jurisdiction or subject to its jurisdiction only through filings by other trusts in which Robert Quirk is involved as either a trustee or a beneficiary is particularly troublesome to the Court and germane to the issue of dismissal. Likewise, the Court clearly recognizes and will not tolerate the unfairness of allowing Mr. Quirk to bring into bankruptcy "partial entities" to resolve liability problems without subjecting all his assets to the reorganization process and the supervision of the bankruptcy court, *see In re Gonic*, 50 B.R. at 714.

## IV. CONCLUSION

In accordance with the foregoing, the Court hereby allows the motion of LIFS to dismiss.